ETHEL NEECE, APPELLEE, v. HARRY L. LEE ET AL., APPEL-
LANTS.

FILED JULY 19, 1935. No. 29287.

*Shelburn & Russell, Cleary, Suhr & Davis* and *Louis H. Cooke,* for appellants.

*McNeny & Sprague, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, PAINE and CARTER, JJ., and RYAN, District Judge.

RYAN, District Judge.

This is an action brought to recover damages for personal injuries growing out of an automobile accident. It was brought in the district court for Adams county by the plaintiff against the defendants Harry L. Lee and the New York Life Insurance Company as Lee's alleged employer. It was alleged in plaintiff's petition that Lee was an agent and employee of the insurance company, and while in the course of such employment and while engaged in obedience to the specific orders and instructions of the company, he, on May 15, 1933, drove a Ford sedan into

the automobile in which plaintiff was riding; that plaintiff suffered severe injuries; and that Lee was negligent by reason of excessive speed and lack of control of the automobile he was driving.

The answer of the New York Life Insurance Company admitted the collision, denied all other allegations in the petition, and alleged contributory negligence on the part of the plaintiff. The answer of the defendant Harry L. Lee alleged that Lee was a resident of Furnas county and was absent from Adams county when the action was commenced; that the defendant insurance company was served with summons in Adams county and service had upon Lee in Furnas county; that there is no joint liability between the defendant Lee and the insurance company with reference to the plaintiff's cause of action; and that the insurance company was made a defendant for the purpose of prosecuting the action in Adams county rather than in Furnas county. The answer further contained a general denial of the allegations of plaintiff's petition.

The reply was a general denial.

Previous to the filing of the answer of the defendant Lee, he filed a special appearance on the grounds set forth in the answer. This special appearance was overruled, but was preserved in the answer of the defendant Lee.

At the close of the plaintiff's evidence the defendant insurance company moved for a directed verdict in its favor, for the reason that the plaintiff had failed to introduce evidence sufficient to constitute a cause of action against the defendant insurance company; that she had failed to establish that defendant Lee was a servant or employee of the New York Life Insurance Company at the time of the accident, or that he was in the course of any employment performing any service for the company. The company renewed the motion at the close of all the evidence. The motions were overruled and the cause submitted to the jury. A verdict was returned by eleven jurors for the plaintiff and against both defendants. Mo-

tions for a new trial were overruled and judgment rendered upon the verdict on April 23, 1934. The defendants bring the case to this court on appeal.

There are many errors assigned, but the principal one relied upon is that there was no joint liability between the defendants, and that the suit was improperly commenced in Adams county, and that no judgment could be rendered against either defendant in Adams county.

The evidence showed that the defendant Lee was a soliciting agent for the New York Life Insurance Company and that he held an agency contract, dated May 3, 1920, whereby he was appointed the company's "special agent for the purpose of canvassing for applications for insurance on the lives of individuals, and of performing such other duties in connection therewith as the officers of said first party may in writing expressly require of him." The contract also provided that Lee should have no authority to accept risks, to make contracts, to extend the time of payments of premiums, or to bind the company by any statement. It provided that Lee should devote to the business of his appointment "such portions of his time as he can spare from his other occupations." It provided further that he should receive as compensation only certain percentages of the first premiums collected. The defendant Lee was authorized to solicit life insurance in any part of the state of Nebraska. The contract provided for cancelation for cause, and further that either party might without cause terminate the agreement upon thirty days' notice. At the time of the accident the defendant Lee was an inspector for the regional agricultural credit corporation. His duties were to make inspections for farm yard and feeder loans for this corporation over a large territory and he devoted practically all of his time to that occupation. He testified that he spent a very small part of his time soliciting life insurance for the defendant company; that he had not written any business for four or five months previous to the accident for the defendant insurance company.

On May 15, 1933, Lee made an inspection south of Republican City for the credit corporation. He left his home at Oxford at 8 or 9 o'clock in the morning by automobile. He drove his Buick car to Alma and there he borrowed a new Ford sedan and drove to a farm where he made a barn yard inspection and completed his work there at about 4 p. m. When he left this farm he drove to Republican City and called at the office of Dr. Talcott to inquire about the physical examination of two applicants for insurance, whose applications he had taken some months previously, but which had been held up for final action. He had no supplies of the insurance company with him at this time. There is a dispute in the evidence as to whether or not the defendant Lee actually saw Dr. Talcott on that day. He called at his office and learned that the doctor was absent and said he would see him later. Lee testifies that he did not see the doctor, but got in his car and left for Alma. The accident took place while Lee was driving from Republican City to Alma about 4:30 p. m. on that day. A witness, Ulis Wolf, testified that he saw and overheard the defendant talking with Dr. Talcott in the barber shop at Republican City.

It is a well-settled rule that, where one person has sustained an injury from the negligence of another, he must, in general, proceed against the party by whose negligence the injury was occasioned. If, however, the negligence which caused the injury was that of a servant while engaged in his master's business, the person sustaining the injury may disregard the immediate author of the mischief and hold the master responsible for the damages sustained. The master selects the servant and the servant is subject to his control, and, in respect to the civil remedy, the act of the servant is in law regarded as that of the master; but it is not enough, in order to establish a liability of one person for the negligence of another, to show that the person whose negligence caused the injury was at the time acting under an employment by the person sought to be charged. It must be shown in addition that

the employment created the relation°of master and servant between them. *King v. New York C. & H. R. R. Co.*, 66 N. Y. 181. In *Wyllie v. Palmer*, 137 N. Y. 248, it was held that the doctrine of *"respondeat superior"* applies only when the relation of master and servant is shown to exist between the wrong-doer and the person sought to be charged with the result of some neglect or wrong at the time and in respect to the very transaction out of which the injury arose. See *Neff v. Brandeis*, 91 Neb. 11.

The defendant Lee worked under a contract by which he was authorized to solicit and receive applications for life insurance anywhere within the state of Nebraska and was to be paid a certain percentage of the first premiums upon policies written under applications received by him. There was no provision that the company should pay a salary or his traveling expenses or any other expenses. There was no provision in the contract as to how or where or when Lee should travel or that he should travel at all. The defendant reserved no control over Lee's manner or method of working. He was not required to devote any particular portion of his time to the service of the company.

In *Barton v. Studebaker Corporation*, 46 Cal. App. 707, wherein it was sought to hold the defendant company liable for the negligent driving of a salesman, who worked upon a commission, and whose negligent driving resulted in injury to a customer of the salesman who was riding with him in an automobile belonging to the salesman, the court said: "The real test as to whether a person is an independent contractor or a servant is whether the person alleged to be the master, under his arrangement with the other party, has or has not any authoritative control of the latter with respect to the manner in which the details of the work are to be performed, and, therefore, this test or element 'must, in the last analysis, always determine what was the essential nature of the relationship between the person who performed the given work and the person for whom it was performed.' Labatt on Master and Servant, sec. 18, p. 56. As some evidence of the nature of the

relationship existing between the corporation and Owen, in this case, we may refer to the fact that Owen received no definite compensation; that the automobile used by him for the purpose of facilitating conveniently the work he engaged himself to perform for the corporation was his property, and that he himself paid the expense of its maintenance and care and for the gasoline necessary to run it. But more important than these considerations, which really involve evidence only tending to show the relationship, the probative value of which as disclosing the nature of the relationship must, of course, be measured by other considerations more directly addressed to the fact, is the fact, clearly and unquestionably established, that his business under his engagement with the corporation was merely that of seeking and finding and procuring purchasers of its automobiles (for which service he was paid a commission) and the further fact that, in prosecuting that business or work, he was at liberty under his engagement with the company to go where and when he pleased and to exercise his own judgment and discretion as to the parties whom he should seek as purchasers or to whom he might present propositions for the sale and purchase of the corporation's automobiles. He was, in other words, perfectly free, under his engagement with the corporation, to choose his own time, place, and means of seeking and procuring purchasers. * * * In brief, he was perfectly free to prosecute the work he agreed by his contract to do for the corporation in any manner he saw fit, using such means or methods as to his judgment might seem the most effective for accomplishing the ends of his business. When a sale was made through him he was paid his stipulated commission, but received no compensation unless a sale was effected through him. He was as much engaged in business for himself when prosecuting the work called for by his contract with the corporation as is the contractor who engages to construct a building for a stipulated sum of money, he agreeing to furnish the labor and materials."

In *James v. Tobin-Sutton Co.,* 182 Wis. 36, the court

said: "It is well settled that where one drives his own automobile a third party cannot be held liable for injuries to a stranger resulting from negligent driving unless the relation of master and servant or principal and agent exists between the third party and the driver and the latter is actually at the time of the injury engaged in the furtherance of the master's or principal's business. If the driver is an independent contractor and not an employee or agent there is no liability on the part of the employer. So the question as to whether the driver is an employee or agent or an independent contractor is the turning point as to liability."

The case of *Aldrich v. Tyler Grocery Co.*, 17 A. L. R. 617 (206 Ala. 138.) in the syllabus states: "A salesman employed on a commission basis, who owns and operates an automobile to assist him in seeking his trade, and whose movements are in no way controlled by his employer, is, with respect to the operation of the car, an independent contractor, so that his employer is not answerable for injuries caused by his negligent operation of the car."

In *Christensen v. Protector Sales Co.*, 105 Neb. 389, the facts were as follows: One Christensen was employed by the defendant to sell its products on a commission basis. He was assigned a territory and given an advancement for expenses. He was furnished with samples of the goods he was to sell with advertising matter. He went into his territory and on the first day out took two orders for merchandise. On the morning of the second day, while traveling by automobile between two towns within his territory, he was accidentally killed. The question involved was whether Christensen, at the time of his death, was an employee of the defendant within the contemplation of the workmen's compensation act. The court said: "Generally, to determine whether the relationship of employer and employee exists, it is necessary to determine the right of the employer to control the manner and method in which the service shall be rendered. This ordinarily includes the right to determine the hours of service and to have the

exclusive right to the time demanded. In the instant case Christensen was not required to render service any particular day or to travel in any special manner or, in fact, to travel at all. He might devote every day of the week to the sale of defendant's products or he might let days go by without doing any act whatever in relation to his contract. Nor was he required to render the service personally. He was paying his own expenses; and he was not obligated to take orders for any specified quantity of defendant's goods. Defendant had no right to dictate to the salesman in relation to the method of transportation which he would employ. The relationship existing between these parties may be likened to that between insurance solicitors and· their companies. When day dawns the agent is free to work or play. If he idles away the day, he does so at his own loss. The company has the right only to revoke the agency agreement. Christensen· was free to make his sales by writing letters to the dealers within his territory; he might have called them by telephone, or he might have employed subagents. He was the master of his own acts, and his compensation depended solely upon the results obtained." The court concluded that he was not an employee within the meaning of the compensation act.

*Priest v. Business Men's Protective Ass'n,* 117 Neb. 198, was a proceeding under the workmen's compensation act. Priest, at the time of his death, was engaged in activities looking toward the establishment of an insurance agency for the defendant in the state of South Dakota, of which he was to be the head, and he would be known as the state agent for South Dakota. The court said: "We think it must be conceded that the management of an insurance agency which employs subagents for soliciting insurance of various kinds and for a number of companies may be considered as an industry in itself, enjoying the privileges and bearing the burdens of the workmen's compensation act; and that such industry may be established though the business is confined to writing insurance for one company. Persons engaged in that industry are in no sense

employees of the insurance companies represented by them. Such agencies are numerous and well known to the business world. It has not been brought to our attention that a claim was ever made that agents in that business were employees of the single or several companies they represent." The court concluded that Priest was engaged in a separate industry and his relation to the defendant would be that of an independent contractor.

The case of *Johnston v. Smith,* 123 Neb. 716, states in the syllabus as follows: "One who undertakes to obtain contracts for advertising for another for no other remuneration than a percentage of the gross amount of the contracts, to pay all of his own traveling expenses, to choose his hours of labor, and to select the prospective customers upon whom he should call in his territory, without any right of such other to control the manner or method of his work, is not an employee, within the meaning of the term 'employee' as used in the workmen's compensation act, even though assigned to a specified territory, and furnished a list of prospective customers and supplies for writing the contracts."

In *State Automobile Ins. Ass'n v. Pickett,* 124 Neb. 481, it was held that a man hired to go into another state and bring back an automobile for a specified sum was an independent contractor.

In *Wesolowski v. John Hancock Mutual Life Ins. Co.,* 308 Pa. St. 117, 87 A. L. R. 783, one Adams was authorized to solicit life insurance for the defendant and to collect premiums. He worked upon a stated salary per week and received commissions upon new business. The company did not require him to use a car, although the superintendent, when informed that Adams had a car, said: "If you have one, you might as well use it." It was held that the insurance company was not liable for the negligence of Adams. In so holding the court said: "While the general rule of law is that a principal is liable for the negligence of his agent while in the performance of the agent's duty, and the reason for the application of this rule is that the

agent, during the performance of his duty, is presumably under the direction and control of the employer, where, as here, the instrumentality used by the agent or employee is not furnished at the direction of the employer, or subject to the employer's direction or control, the employer should not be held responsible."

The court further said: The defendant was in no position to require Adams to use his car, "for the use of his car was no part of his contract of service. It could not direct him when, where or how to drive his car. It had no more control of Adams' car in which he transported himself than it had of the shoes he used in walking from patron to patron. The employer was indifferent as to whether Adams walked, rode a bicycle, or operated a motor car to reach the people with whom he transacted business."

The appellee relies upon the case of *Singer Mfg. Co. v. Rahn*, 132 U. S. 518, 33 L. Ed. 440. It appears to the court that that case is readily distinguishable from the instant case. Paragraphs 2 and 3 of the syllabus in L. Ed. read:

"The relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the results to be accomplished, or, in other words, not only what shall be done, but how it shall be done."

"Where a person, for certain commissions to be paid him, agrees to give his whole time and services to the business of a company in selling its machines, and the company reserves to itself the right of prescribing and regulating not only what business he shall do, but the manner in which he shall do it, such person is the company's servant, for whose negligence, in the course of his employment, the company is responsible."

In that case the contract of employment provided that the agent should give his exclusive time and best energies to the business of said company. It furnished him a wagon as a means of transportation, though it required him to furnish a horse and harness to be used in connec-

tion with it. He agreed to employ himself under the direction of the said Singer Manufacturing Company under such rules or directions as it or its manager at Minneapolis should prescribe.

In considering the case the court said: "In short, Corbett, for the commissions to be paid him, agrees to give his whole time and services to the business of the company; and the company reserves to itself the right of prescribing and regulating not only what business he shall do, but the manner in which he shall do it; and might, if it saw fit, instruct him what route to take, or even at what speed to drive."

As has been stated, this action was commenced in Adams county and service upon the defendant Lee was had in Furnas county. Upon the trial, if the plaintiff did not establish a right to recover against the defendant insurance company, then, as a matter of law, the court would have no jurisdiction over the defendant Lee. *Peters v. Pothast*, 120 Neb. 208. In order for the plaintiff to recover against either defendant, the defendant company must be held liable. We conclude that the defendant insurance company was not liable for the negligence of the defendant Lee and that the action was improperly brought in Adams county against the defendant Lee.

The decision of the district court is accordingly reversed and the cause remanded, with instructions to dismiss.

REVERSED.