THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY *v.* JOSEPH M. TONE ET AL.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

Argued December 9, 1938—decided February 7, 1939.

*Charles Welles Gross,* with whom was *Reese H. Harris, Jr.,* for the plaintiff.

*Harry Silverstone,* special assistant attorney general, with whom, on the brief, was *Dennis P. O'Connor,* attorney general, for the defendants.

MALTBIE, C. J.   The plaintiff is a mutual life insurance company organized and existing under the laws of Wisconsin and having its principal office and place of business in Milwaukee.   The defendants are officers of this state, charged with the administration of the unemployment compensation law.   General Statutes, 1937 Sup., Chap. 280a.   The complaint seeks a determination by way of a declaratory judgment of the question whether the agents of the plaintiff or any of them, residents of and operating within this state, are within the scope of the act so as to impose upon it obligations under its terms.   The act defines "employment" as used in it to mean, so far as germane to the issues before us, "any service, including service in interstate commerce, performed under any express or implied contract of hire creating the relationship of master and servant."   The question before us may be restated in this way: Does the relationship of master and servant exist between the plaintiff and its agents or any of them?

The salient facts stated in the stipulation for reservation are as follows: The plaintiff carries on its business under a plan by which it enters into written contracts only with general agents, whereby each such agent has an exclusive right to solicit applications for insurance and annuity contracts within a specified territory.   The general agent, under authority in his contract, enters into contracts with district agents or special agents for the development of various portions of the territory specified in the agreement with the general agent.   Any district or special agent, under the terms of his contract, may in turn contract with one or more soliciting agents to operate within a certain territory.   Agency contracts are frequently made with partnerships.   The plaintiff has entered into a contract with a general agent who has exclu-

sive authority to solicit applications within the entire state of Connecticut. When the suit was started there was no district agent in the state but there were thirty-six full-time special agents and ten part-time special agents operating under him; but by contract effective June 1, 1938, the general agent had appointed one district agent for a certain specified territory in the state, the latter had made contracts with various soliciting agents under him within that territory, and some of the special agents formerly operating under the general agent have become soliciting agents under the district agent.

Full-time agents are not required to devote their entire time or any specified part of it to life underwriting, and while they are not permitted to engage in other business activities except by consent, it is the practice of the plaintiff to permit them to engage in such activities where they do not interfere with their underwriting activities, and they do in fact engage in them. Part-time agents are regularly engaged in some established business or occupation, not involving life underwriting, which is their major or primary business activity; and they engage in life underwriting only as a side line. Many full-time agents operate under more than one general agent and all general agents have contracts with other companies under which they place applications with them under certain circumstances.

The plaintiff has no liability for the rent or incidental expenses connected with the conduct of the business in this state or for clerical help, nor has the general agent or any other agent any authority to incur any liability on behalf of the plaintiff incidental to soliciting applications except the payment of the license fee required by the state for agents and the expense of the medical examination of applicants.

Each general agent maintains an office and conducts his activities entirely at his own expense, although the name of the company usually appears on the door of his office, placed there by the agent. The income of the general agent comes from two sources: commissions, which are fixed percentages of premiums collected for a limited number of years on applications secured by the general agent or agents operating under him, and collection fees, a fixed percentage of premiums collected in certain cases where he is not entitled to a commission. The income of other agents consists entirely of commissions based upon the policy contracts secured by them. Except where an agency contract has terminated, the plaintiff does not pay the commissions, but they are deducted before the general agent accounts to the company for moneys received. Such commissions are received by the agents at irregular intervals and in varied amounts, depending upon the applications secured and the payments of the premiums for the issuance of the policies. The company recognizes no obligation as to the distribution of commissions among the various agents who share therein, regarding such commissions as matter of private interest only between the contracting parties. Where the contract of a general agent is terminated and a new general agent has been appointed, he has no interest in the business of the former general agent and pays over renewal premiums received by him to the plaintiff and it distributes the commissions due thereon to the agents entitled to them. The plaintiff furnishes the general agents various information in the shape of documents and books relating to the method of conducting its business and certain advertising matter and stationery, but other advertising matter may be bought by the general agent for his use and the use of the agents operating under

him. The plaintiff does not exercise supervision or control over any of its agents with respect to the place and manner in which they conduct their business operations or the time they devote to them, but the company has an interest in the development of territory, and if any agent neglects his territory to the injury of the company's business, the only remedy of the company is to terminate the contract.

The contracts made by the plaintiff with its general agents contain the following provisions: "Nothing contained herein shall be construed to create the relation of employer and employee between The Company and General Agent. Within the territory above described General Agent shall be free to exercise his own judgment as to the persons from whom he will solicit insurance and the time and place of solicitation, but The Company may from time to time prescribe rules and regulations respecting the conduct of the business covered hereby, not interfering with such freedom of action of General Agent, which rules and regulations shall be observed and conformed to by General Agent"; "General Agent shall endeavor to promote the interests of The Company as contemplated by this contract, and shall so conduct himself as not to affect adversely the business, good standing or reputation of himself or The Company." The contracts also provide that they may be terminated by the agent upon not less than thirty nor more than sixty days written notice or by the company in certain events and for certain causes, among them, the failure of the general agent to comply with or perform any of their requirements, or without assigning any cause upon not less than sixty days written notice. Similar provisions are contained in the contracts of other agents. The company issues to the agents a book of "Rules and Instructions," which defines in detail the

188

requirements of the plaintiff as regards policies to be issued by it, but which contains no provisions as to the manner in which the agent shall make contact with applicants for policies, the time he shall devote to the work or how he shall conduct himself in the performance of that work.

The Connecticut act was adopted as the result of the enactment of the federal social security acts; 42 U.S.C.A., §§ 501, 901, 1001; 49 U.S. Stat. at Large, pp. 626, 635; many other states have adopted similar acts; and the federal and state statutes represent "a coöperative legislative effort by state and national governments, for carrying out a public purpose common to both, which neither could fully achieve without the coöperation of the other." *Carmichael* v. *Southern Coal & Coke Co.*, 301 U. S. 495, 526, 57 Sup. Ct. 868; *Steward Machine Co.* v. *Davis*, 301 U. S. 548, 588, 57 Supt. Ct. 883. We would hesitate to adopt a construction of our statute which would in any way interfere with the harmonious operation of the plan as a whole. However, the stipulation for reservation states that in twenty-nine of the states and the District of Columbia, where statutes similar to ours have been adopted, either by specific statutory exemption or administrative ruling, life insurance agents compensated by commissions are exempted, while in only five states have rulings or decisions that they are within the statutes been made and in no instance has this been held to be so by a court of last resort; and the commissioner of internal revenue has made a ruling that agents of the plaintiff authorized to solicit applications for life insurance policies or annuity contracts are not within the federal act, and, while not of course in any sense conclusive of the final attitude of the federal officers charged with the administration of the act, this ruling is entitled to be considered until reversed by higher

authority. *Savings Bank of Rockville* v. *Wilcox,* 117 Conn. 188, 194, 167 Atl. 709. A decision on our part that the plaintiff's agents are not within the act would, therefore, accord with a rather generally accepted view of the proper scope of the law. However, our duty is to seek the legislative intent expressed in the act of our own Legislature and, having ascertained that intent, we must give effect to it.

The question then is, what is the meaning to be given to the definition of employment we have quoted, particularly as regards the provision that it shall mean "any service . . . under any express or implied contract of hire creating the relationship of master and servant." This definition differs from that adopted in our Workmen's Compensation Act where, with certain exceptions, an employee is defined to be "any person who has entered into or works under any contract of service or apprenticeship with an employer," and an employer to mean "any person, corporation, firm, partnership, voluntary association, joint stock association, the state and any public corporation within the state using the services of another for pay." General Statutes, § 5223. We have no occasion now to consider whether the definition in the act before us was intended to be narrower in scope than that in the Workmen's Compensation Act. The plaintiff's position is that, while its agents perform services for it under contracts and as to all matters directly pertaining to the conduct of its business are required to act in accordance with their terms and the regulations it issues, they are in fact carrying on an independent employment and in effect occupy a position in the nature of that of independent contractors. We have defined an independent contractor in this way: "Whatever the other conditions of a contract may be, if, in its essential features, it provides that the

employer retain no control over the details of the work, but leaves to the other party the determination of the manner of doing it, without subjecting him to the control of the employer, the party undertaking to do the work is a contractor and not a mere employee." *Aisenberg* v. *Adams Co., Inc.,* 95 Conn. 419, 423, 111 Atl. 591. "The independent contractor contracts to produce a given result by methods under his own control, while the employee contracts to produce a given result subject to the lawful orders and control of the employer in the means and methods used; these point in some degree to the duty of service to the employer." *Tortorici* v. *Moosop, Inc.,* 107 Conn. 143, 146, 139 Atl. 642. See *Francis* v. *Franklin Cafeteria, Inc.,* 123 Conn. 320, 324, 195 Atl. 198.

Various elements may enter into the determination of the question whether one who performs services for another is his servant or is exercising an independent employment. Restatement, 1 Agency, § 220. The many cases involving the question which have come before the courts are determined by the facts of the particular situations presented, and under these circumstances sometimes one and sometimes another fact has been regarded as of predominating weight. That such a person is an agent for the one for whom he is acting is by no means conclusive.

Numerous circumstances in the case before us militate against the conclusion that the relationship of the plaintiff to its agents falls within the definition in the statute. The obligations of the agents are carefully defined by the terms of the contracts and the regulations issued under them and are not left to be fixed by instructions as to individual situations which may arise. The ordinary method of payment of compensation is by deduction from premiums paid or amounts collected rather than by sums paid by the

company.  General agents maintain their own offices
and, with few and definite exceptions, pay the expenses
connected with their work, including that for necessary
clerical assistance.  Other agents operate under the
general agents and in pursuance of contracts made
with them.  General agents have contracts with other
companies under which in certain instances they issue
policies upon the applications secured by them or their
agents.  Agents other than general agents may give
only a part of their time to the service of the plaintiff,
and special or soliciting agents may have a definite
major or primary business activity.  A partnership
may be a general agent.  While the contract with a
general agent may be terminated by the company and
that with other agents by the general agent of the
company for cause or even without assigning any rea-
son therefor upon not less than thirty days written
notice, such a termination does not cause the agent
to forfeit any commission earned, although if termi-
nated for certain reasons it might subject him to a
reduction in. the amounts payable.  The plaintiff's
brief suggests  other considerations pointing to the
same result, which are very likely true but which,
as they are not included in the stipulation of facts, nor
such that we can take judicial notice of them, we are
not at liberty to use.

Of more importance, however, in considering the
questions before us is the matter of control which the
plaintiff exercises over its agents.  In many instances
the decisive factor in determining whether one who
performs services for another is a servant or is exer-
cising an independent employment is the right of con-
trol which the former has over the other, the " 'right
to direct what shall be done and when and how it shall
be done; . . . the right to the general control.' "
*Aisenberg* v. *Adams  Co., Inc.,* supra, 421; *Francis*

v. *Franklin Cafeteria, Inc.,* supra, 324. We have quoted the provision from the contract that nothing therein is to be construed to create the relation of employer and employee and that the agent is free to exercise his own judgment as to the persons from whom he solicits insurance and the time and place of doing so, reserving to the company the right to prescribe rules and regulations affecting the conduct of the business which do not interfere with such freedom of action on the part of the agent; and while undoubtedly such a provision would not be effectual to prevent one from being regarded in law as a servant if that was his real relationship, this provision has significance as bearing upon the question whether the agents in this case were in fact the servants of the plaintiff. Restatement, 1 Agency, p. 490. The stipulation itself states that the plaintiff does not in fact exercise supervision or control over any of its agents in respect to the place and manner in which they conduct their business operations or the time they shall devote thereto, and that if any agent neglect his territory so that the company's business suffers the only remedy is to terminate the contract in accordance with its terms. Thus it is apparent that the plaintiff cannot direct its agents when they are to work or where within the territory allotted to them they may seek applications; it cannot direct or forbid them to solicit any particular person; provided they conduct themselves so as not to affect adversely the business, or their own good standing or reputation or that of the plaintiff, it cannot direct them as to the manner in which they shall solicit possible applicants; and, in short, the plaintiff cannot control them beyond the limitations we have stated in the method and manner they shall use in seeking to secure applications for insurance. There is lacking that right of general control

which is necessary to constitute them servants of the plaintiff.

It is true that in *Larke* v. *John Hancock Mutual Life Ins. Co.*, 90 Conn. 303, 97 Atl. 320, we held that the dependent widow of an agent employed by the defendant to solicit insurance and collect insurance premiums was entitled to receive compensation for an injury due to a frost bite suffered while driving about in the course of his employment; but it was found that he was at the time under the supervision of the district manager of the company who laid out the route he was to take from day to day, that he was required to visit definite persons and places at definite times irrespective of weather conditions; and no claim was made that he was not an employee of the company within the provisions of the Workmen's Compensation Act. 165 Supreme Court Records & Briefs, 466. In *Hall* v. *Sera,* 122 Conn. 291, 152 Atl. 148, we sustained a verdict against an agent of the John Hancock Mutual Life Insurance Company and the company based upon the former's negligence in the operation of an automobile on the ground that he was at the time of the accident operating the car as the agent of the company within the scope of his employment; it was found that he was employed under a written contract and devoted all his time to the work entrusted to him; that each week he was given a list of collections to be made and it was his duty to make those collections and turn the proceeds in to the company at a definite time; and upon these and other facts, we held that the agent was so acting under the company's control that the jury could not reasonably have found otherwise than that he was its employee. In both of these cases there were elements present which distinguish them from the situation before us. In *Judd* v. *Metropolitan Life Ins. Co.*, 111 Conn. 532, 150 Atl.

514, we sustained an award of compensation to an agent of the defendant where he suffered an injury while going about to solicit policies of insurance, but the defendant in that case did not claim that the plaintiff was not an employee within the scope of the Workmen's Compensation Act; 377 Supreme Court Records & Briefs, 724; and the sole issue was whether the injuries suffered arose out of or in the course of the plaintiff's employment.

The defendants rely particularly upon the case of *Aisenberg* v. *Adams Co., Inc.*, 95 Conn. 419, 111 Atl. 591. In that case we sustained an award to a plaintiff under the Workmen's Compensation Act based upon an injury suffered by a traveling salesman of the defendant. Without detailing the facts of that case we quote from the opinion its summary of them (p. 422): "The means and method of conducting this business, as we have in part detailed, comprise the essence of this business. The subject of sale, the terms of sale, and the proceeds of sale, remained in the control of the Company. Practically this constituted a general control." On the facts before us we found present a general control which characterized the employment as one within the relation of master and servant rather than one of the plaintiff as an independent contractor. We did point out that the defendant was at liberty to discharge the deceased at any time and said (p. 423): "The right of discharge is one of the strong indications that the relation is one of employment. An independent contractor must be permitted to finish his contract in the absence of breach on his part." While this is no doubt true, an unlimited right of discharge is of course not conclusive; thus, except as limited by contract, one having real estate for sale may at any time terminate the agency of a real estate broker with whom he has listed the prop-

erty, and the broker is not entitled thereafter either to continue to represent the seller or to receive compensation for any work he has done or money he has expended. *Harris* v. *McPherson,* 97 Conn. 164, 169, 115 Atl. 723.

It would serve no purpose to discuss the innumerable cases dealing with the varied relationships existing between one who avails himself of the services of another for hire, for the varying facts of the particular situations before the courts have determined the conclusions reached. The plaintiff does, however, cite to us four cases wherein, under circumstances quite similar to the situation before us it has been held that the agent of a life insurance company engaged in soliciting applications for insurance was not the servant of the company so as to render it liable for injury due to his negligence. *Neece* v. *Lee,* 129 Neb. 561, 262 N. W. 1; *Income Life Ins Co.* v. *Mitchell,* 168 Tenn. 471, 79 S. W. (2d) 572; *American Savings Life Ins. Co.* v. *Riplinger,* 249 Ky. 8, 60 S. W. (2d) 115, and *Vert* v. *Metropolitan Life Ins. Co.,* 342 Mo. 629, 117 S. W. (2d) 252, 256. The result of the decisions is summed up in the Restatement of the Law of Agency, Vol. 1, p. 485, as follows: "Those rendering service but retaining control over the manner of doing it are not servants. They may be agents, agreeing only to use care and skill to accomplish a result and subject to the fiduciary duties of loyalty and obedience to the wishes of the principal; or they may be persons employed to accomplish or to use care to accomplish physical results, without fiduciary obligations, as where a contractor is paid to build a house. An agent who is not subject to control as to the manner in which he performs the acts that constitute the execution of his agency is in a similar relation to the principal as to such conduct as one who agrees only to accomplish mere physical re-

sults. For the purpose of determining liability, they are both 'independent contractors.' "

It should be noted that we are here concerned only with agents of a life insurance company engaged in the solicitation of applications for policies and compensated by commissions.

We answer "No," to the question in the reservation asking whether the agents of the plaintiff are its employees or servants within the contemplation of the Unemployment Compensation Act, and "Yes," to the question whether the administrator of the act erred in ruling that they were.

No costs will be taxed in this court.

In this opinion the other judges concurred.