MOORMAN MANUFACTURING COMPANY, Appellant, v. IOWA UNEMPLOYMENT COMPENSATION COMMISSION et al., Appellees.

No. 45290.

124

MARCH 18, 1941.

MODIFIED AND REHEARING DENIED AUGUST 6, 1941.

Wilson & Schmiedeskamp, Miller, Huebner & Miller, and Harris & Van Metre, for appellant.

J. Charles Crawley, Homer M. Lyon, and George Finch, for appellees.

WENNERSTRUM, J.—The question for decision in this litigation is whether the Iowa Unemployment Compensation Law is applicable to the claim of one Edmund J. Carroll, who it is asserted is an employee of the Moorman Manufacturing Company, plaintiff-appellant herein.

For purposes of brevity the Moorman Manufacturing Company will hereafter be referred to as the Company; Edmund J. Carroll, the claimant, will be referred to as the claimant; and

the Iowa Unemployment Compensation Commission will be termed the Commission. The Iowa Unemployment Compensation Law will be referred to as the statute.

The factual situation that is the basis of this litigation is briefly summarized in the decision of the Commission, who by reason of an appeal to that body affirmed a prior ruling of the appeal tribunal, which held that claimant was an employee of the Company. These findings of fact, incorporated in the Commission's decision, some of which appellant claimed are unsupported under the evidence, are as follows:

"Claimant entered into a written agreement with the respondent company on about July 12, 1937, to sell its products to farmers on a commission basis. He was to solicit orders in certain specified territory, which was limited to the extent described in the contract. He was given instructions on how to approach a sale in a most effective manner, by attending sales meetings and by direct instructions of the sale supervisor who covered the territory which he was to serve. These instructions included performing various functions such as, delousing and worming poultry, spraying poultry houses and barns, and in general performing a great deal of so-called 'free service'. Orders procured would be sent to the company and if approved by them would be shipped on open account. The contract was for a period of only 6 months duration. While not a part of the written contract it was brought out during the hearing that claimant was required to purchase certain items supplied to him by the company at their discretion. Also, he was required to file a work report indicating for each week the number of hours worked, the number of orders taken, the amount of weekly sales in money for the elapsed period, the identity of the products sold, and such other remarks as might be deemed of interest to either party.

"These reports were filed on a regular United States postcard addressed to the company headquarters and bore the instructions 'Always mail one report to the company office and one to your manager each week. Your commission checks will be held until all weekly reports are received.' His manager or supervisor would make surprise visits at the home of the salesmen or 'dealers' at various times of the day or week to see that

they were at work. Claimant used his own means of conveyance and paid his own traveling expenses. To induce greater effort, the company would at times offer bonuses; some of them the claimant procured, including a haberdashery outfit, a suit of clothes, some dishes, and a turkey for Christmas. Claimant could use his own judgment how and when to work and was paid a remuneration only in the form of commission on the merchandise for which he took orders. Claimant could have other and additional employment if he should so desire. Claimant quit about February 22, 1938, by handing in his resignation.

"BASIS OF LAW upon which decision is made:

"Section 19(g) states: 'Except as otherwise provided in this subsection (g), "employment" means service, including service in interstate commerce, *performed for wages* or under any contract of hire, written or oral, express or implied.' [1551.25 (G) (1) of 1939 Code.]

"Section 19(m) states: ' "Wages" means *all* remuneration payable for personal services, including *commissions* and bonuses and the cash value of all remuneration payable in any medium other than cash.' . . . [1551.25 (M) of 1939 Code.]

"Section 19(g) (6) states: 'Services performed by an individual for wages shall be deemed to be employment subject to this Act *unless and until* it is shown to the satisfaction of the Commission that (a) such individual has been and will continue to be free from control *or direction* over the performance of such services, both under his contract of service and *in fact.*' [1551.25 (G) (6).]

"While the written contract indicates that no control was had by the employer over the manner in which claimant performed his services, it was freely admitted by the employee that directions were given him continuously on what to do in order to procure orders for the merchandise. Also, the immediate supervisor of claimant's efforts would *in fact* see to it that claimant was on the job every available hour he may have had. This is further indicated by the report claimant was required to file each week, with the admonition printed thereon: 'Your commission checks will be held until all weekly reports are received.'

"In view of these conditions it cannot be said that claimant was free from control *or* direction 'in fact'.

"Claimant's earnings depended upon the commissions he would receive in connection with the orders he would take for respondent employer's merchandise, but such commissions have been clearly defined as wages under section 19 (m) of the Iowa Unemployment Compensation Law.

"DECISION:

"Claimant having performed service in 'employment as defined' for an 'employer so defined' is entitled to benefits if otherwise eligible, in the amount and to the extent as indicated by his earnings, including those he earned as commissions and bonuses on orders taken for merchandise for respondent employer. Respondent employer is required to file a report of earnings of claimant during the period he rendered personal services 'in employment' and pay contributions thereon in accordance with the provisions of the Iowa Unemployment Law."

Inasmuch as the questions herein involve legislation that has not heretofore been considered by this court, it is advisable that we herein set forth further portions of the statute which are applicable and which have not heretofore been mentioned in the Commission's finding of fact. All statutes mentioned in the Commission's finding of fact and in this opinion were in effect at the times involved in this litigation.

Section 1551.08 of the 1939 Code of Iowa sets forth the declaration of state public policy in connection with unemployment compensation legislation and is in part as follows:

"* * * The legislature, therefore, declares that in its considered judgment the public good, and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own."

Section 1551.12 (I), which relates to the procedure in connection with a court review, is in part as follows:

"* * * In the absence of fraud any finding of fact by the commission, after notice and hearing as herein provided, shall be binding upon the court on appeal, when supported by substantial and competent evidence. * * *"

The statutory direction in connection with an appeal is as follows:

"1551.12 * * * J. Decision on appeal. Any order or decision of the commission may be modified, reversed, or set aside on one or more of the following grounds and on no other: 1. If the commission acted without or in excess of its powers. 2. If the order or decree was procured by fraud. 3. If the facts found by the commission do not support the order or decree. 4. If there is not sufficient competent evidence in the record to warrant the making of the order or decision "

Inasmuch as there is some variance in the holdings of the several state courts in connection with the question as to what constitutes employment and service it might be well to state that the original Unemployment Compensation Law, as originally introduced in the Forty-sixth General Assembly, Extraordinary Session, provided two additional provisions as to what constitutes service. They were referred to as subsections (b) and (c). It might be stated that in the original act these three subsections were each dependent upon the other and in its entirety was as follows [Senate File No. 1, section 19(g), subsection (6)]:

"(6) Services performed by an individual for wages shall be deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the commission that

"(a) such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(b) such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

"(c) each individual is customarily engaged in an independently •established trade, occupation, profession or business." As finally enacted the word "and" in the last line of subsection (a) was stricken and the remainder of subsection (6) was also stricken.

This particular legislation relative to unemployment com-

pensation was introduced in a large number of states on or about the time of the adoption of the Iowa statute. In four states the provision relative to service is apparently similar to that adopted by the Iowa legislature. In thirty-three states the provision relative to what constitutes service is in the form as originally introduced in the Iowa legislature and as last above quoted. In five states the provision has been deleted from the statutes entirely, and in three states the original bill introduced was identical to the provisions found in the original legislation presented to the Iowa legislature but in these three states the legislature has deleted subparagraph (b) and enacted subparagraphs (a) and (c). In other states there has been substitution of the word "or" for the word "and" in connecting the subparagraphs.

At the outset of our consideration of the questions that are involved and because of the initial character of our ruling in connection with this particular litigation, it is well that this court set a guide of interpretation for this particular statute.

This court is impressed with the fact that unemployment compensation legislation is remedial in character and that its enactment was to make possible the avoidance of involuntary unemployment and to distribute the cost of involuntary unemployment among the employers of industry who employed workers for wage.

Inasmuch as the statute is remedial in character and seeks to aid in bettering the social conditions of persons engaged in industry who come under the classification of employees it might be well to ascertain what this court and other courts have held in connection with remedial legislation. In the case of Rish v. Iowa Portland Cement Company, 186 Iowa 443, 448, 170 N. W. 532, 534, in commenting upon the workmen's compensation law this court stated:

"* * * the tendency of the courts in all jurisdictions where similar acts are in force is to give a broad and liberal construction to the provisions thereof. * * *"

Likewise in the case of Pierce v. Bekins Van & Storage Co., 185 Iowa 1346, 1350, 172 N. W. 191, 192, it is further stated in connection with a workmen's compensation case as follows:

"The statute is highly remedial, and is to be construed as such statutes are. Howsoever the cases may differ, there is no difference as to the rule that such statutes as this shall have a broad and liberal construction in aid of accomplishing the object of the enactment. See Kennerson v. Thames Towboat Co., 89 Conn. 367 (94 Atl. 372). The title to the act indicates the breadth and scope of the act. * * *"

However it is the contention of the appellant in this case that inasmuch as this particular statute is of a taxing nature that it must be strictly construed. The supreme court of the United States has declared in the case of Carmichael v. Southern Coal & Coke Co., (1937), 301 U. S. 495, 508, 57 S. Ct. 868, 871, 81 L. Ed. 1245, 109 A. L. R. 1327, that legislation of this character is of a taxing nature when it states:

"While the particular name which a state court or legislature may give to a money payment commanded by its statute is not controlling here when its constitutionality is in question, [citing cases], we see no reason to doubt that the present statute is an exertion of the taxing power of the state." (Citing cases.)

Consequently it is our holding in this case that the provisions of the Iowa Unemployment Compensation Law likewise are of a taxing nature. Inasmuch as the statute is of a taxing nature we are then confronted with the rule of law in this state that in tax cases the general rule for statutory construction is against the taxing body. Palmer v. State Board of Assessment and Review, 226 Iowa 92, 94, 283 N. W. 415. See also Great Northern Railway Company v. Board of Supervisors, 197 Iowa 903, 904, 196 N. W. 284; Hawkeye Life Insurance Company v. Munn, 223 Iowa 302, 306, 272 N. W. 85. There are numerous other cases holding to this same effect but references to all of them are noted in the cases last mentioned.

Despite the fact that this statute is of a remedial character and because of that fact we should seek to carry out the general purposes for which it was enacted, yet we are constrained to hold that this general rule of law should not and cannot be applicable where it is involved in connection with a taxing statute and that each individual case under the unemployment

compensation statute must be considered and construed upon the facts as presented, irrespective of the purpose of the statute to generally remedy social conditions that naturally develop by reason of unemployment.

We are of the opinion that the statement found in North-western Mutual Life Insurance Company v. Tone, 125 Conn. 183, 190, 4 A. 2d 640, 643, 121 A. L. R. 993, is quite applicable to our consideration of this particular question where that court states:

"The many cases involving the question which have come before the courts are determined by the facts of the particular situations presented, and under these circumstances sometimes one and sometimes another fact has been regarded as of predominating weight."

The question then remains as to whether or not the court is bound by the finding of facts which in this particular case held that claimant was an employee and not an independent contractor. As previously noted under subsection J of 1551.12 an order or decision of the Commission may be modified, reversed, or set aside on one or more of the grounds therein stated. The third ground is as follows [section 1551.12, subsection (J) (3, 4)]:

"If the facts found by the commission do not support the order or decree," and the fourth ground is: "If there is not sufficient competent evidence in the record to warrant the making of the order or decision."

And so in cases under the Unemployment Compensation Law it is our conclusion that as provided by that statute the decision of the Unemployment Compensation Commission can only be set aside if the facts found by the Commission do not support the decree and there is not sufficient competent evidence in the record to warrant the making of the order or decree. It is our holding that each case is dependent upon the facts presented and that no hard and fast rule can be laid down so that it can be said that certain groups, such as Moorman Manufacturing Company might be classified in, come under the provisions of the law. This is particularly true in connection with

arrangements that provide for commission compensation. The statute anticipated an arrangement for services where the person under a commission agreement might not be free from control or direction over the performance of such services, both under his contract of service *and in fact*. See 1551.25 (G)(6)(a).

■ The question that we must decide in this case is as to whether or not claimant was an employee of the Moorman Manufacturing Company, by reason of the definition of employment as set forth in the statute, or was an independent contractor. There is no dispute in the evidence as to the finding of facts, as incorporated in the Commission's decision, with the exception as to the consideration of certain letters and affidavits as evidence and for the purpose of consideration by this court these findings may be accepted as a verity. In order that we may have a more definite idea of the claimant's relationship with the Moorman Manufacturing Company, it is advisable to set forth the contract which was entered into between the claimant and the Company. In fact two contracts were entered into, one of which was dated July 12, 1937, which was canceled on November 13, 1937, and a further contract which was entered into on November 15, 1937, from which it is claimed claimant resigned on April 4, 1938. The last contract was necessitated by reason of the fact that there was an increase of territory given to claimant under the second contract. These contracts were identical in nature and for the purpose of setting forth the nature of the relationship between the parties the last contract is here set forth:

"Dealer's Contract"

"This contract made and entered into this 15th day of November A. D. 1937, at Quincy, Illinois, by and between the Moorman Manufacturing Co., party of the first part and

E. J. Carroll          of          Waterloo, Iowa.
(Name of Dealer)                (Dealer's town and state)
party of the second part, witnesseth:

"1. The duties of the dealer shall be to solicit orders for the purchase of merchandise manufactured and/or dealt in by the Company, to be approved and filled by the Company at Quincy, Illinois.

"2. The Company is interested only in sales results accomplished by the Dealer. No advice, suggestions or recommendations given by the Company to the Dealer shall be deemed to be a change or modification of this contract or binding upon the Dealer. This contract can be changed and modified only by a formal writing signed by both parties.

"3. The Company hereby agrees to pay Dealer commissions on orders taken by him of parties whose homes are located in the territory here named, according to the rate of commission shown on the back of this contract each week on all goods shipped the previous week the next day after receipt of all reports properly made out, except on future shipment orders. Dealer is to receive no commission on future orders until they have been shipped and no commission whatever if they be shipped after the expiration of this contract.

"4. The Dealer hereby agrees to at once refund to the Company any and all commissions paid to him on an account which in the sole judgment of the Company is uncollectible, refused shipment, or when for any reason the Company refunds the purchase price of any order or any part of it to the customer. The Company agrees to refund to Dealer any commission Dealer has returned to the Company, provided account is later paid. It is agreed that at the time of the expiration of this contract, all commissions which are or may later become due Dealer are to be held by Company until all accounts are paid and Company property in the hands of dealer is returned to Company.

"5. The Dealer hereby agrees to at once refund to the Company full commission paid him, plus 5% on any order where the Dealer made a price reduction, allowed the freight or any financial concession or gave a present of any kind other than authorized by the Company to secure the order, and where he gives to any customer any kind of cash or other kind of rebate to get him to pay a bill.

"6. Dealer agrees to make good to the Company at its Quincy, Illinois, office, all money collected from customers, to promptly return or pay for all sales equipment, advertising matter, or any other Company property, after expiration of this

contract, and to always promptly return or pay for any and all goods borrowed from Company's customers.

"7. The term of this Contract shall be for six months from date. This contract, however, may be renewed for additional periods by another agreement in writing endorsed on or attached hereto.

"8. The Company hereby authorizes the Dealer to sell in the following territory: Fox, Barclay, and North one-half of Poyner townships in Black Hawk County, Ia.

"Moorman Mfg. Co. (Party of the First Part)

"(Signed) C. W. Moorman      (Signed) E. J. Carroll

"Vice President-Treasurer      Party of the Second Part

"Important—Read this contract carefully before signing."

It will be observed from a study of this contract and from the finding of facts as heretofore set forth that claimant could use his own judgment how and when to work, that he used his own means of conveyance, that he paid his own traveling expenses, that he was to solicit orders from a certain specified territory which was limited to the extent described in the contract, that the contract was for a period of six months, that there was no provision that would prevent claimant from having other and additional employment if he so desired. It is further shown that the company did seek to induce greater effort on the part of this claimant and all similar dealers by giving them bonuses and that this claimant was given instructions as how to more effectively carry on his sales efforts and was also given instructions in connection with the use of the products sold by the Company. The evidence shows that the Company's supervisors would at times make surprise visits at the home of the salesman or dealer for the purpose of ascertaining as to whether the dealer was at work. It is also shown that the claimant was required to purchase items from time to time that were furnished by the Company and which were sent to the dealer at the Company's discretion. The record further shows that claimant was required to file work reports indicating for every week the number of hours worked, the number of orders taken, the amount of weekly sales in money for a certain period and a summary of the products sold. Under the facts as have been related the court

must determine as to whether or not the claimant was an employee under the provisions of the Unemployment Compensation Act. It is the contention of the Commission that employment as defined and set forth in the statute is determinative and controlling and that it is within the power of the legislature to broaden the conception of the term employment and to restrict the common-law conception of that term.

■ Our attention has been called to the case of Johnson v. United States, (1908), 1 Cir., 163 F. 30, 32, 18 L. R. A., N. S., 1194, where it is stated: .

"We recognize that courts have been disinclined to extend statutes modifying the common law beyond the direct operation of the words used, and that at times this disinclination has been carried very far. But it seems to us that there may be statutes that need a different treatment. A statute may indicate or require as its justification a change in the policy of the law, although it expresses that change only in the specific cases most likely to occur to the mind. The Legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized and obeyed. The major premise of the conclusion expressed in a statute, the change of policy that induces the enactment, may not be set out in terms, but it is not an adequate discharge of duty for courts to say: We see what you are driving at, but you have not said it, and therefore we shall go on as before."

Despite the fact that the purposes of remedial legislation is salutary we feel that this court should not entirely go beyond the statute in its efforts to make all-inclusive the provisions of the Unemployment Compensation Law. In many Iowa cases relating to the Workmen's Compensation Law the test as to what constitutes employment has been set forth. In the case of Mallinger v. Webster City Oil Company, 211 Iowa 847, 850, 234 N. W. 254, 256, this court stated:

■ "At the outset, it may further be observed that the general assembly of Iowa, in the enactment of Section 1421, Par. 3 (c), did not define the term 'independent contractor,' used in said act. However, this court has held that the term 'in-

dependent contractor' does, despite the liberal interpretations of the act, retain its common-law meaning, and is still to be given the meaning that courts have always given the term. Norton v. Day Coal Co., 192 Iowa 160. This means that the tests of the common law are applicable, and none other.

"Before passing to the analysis of the written contract in question, it may be well to examine and analyze the usual legal tests that are adopted by courts in determining whether or not a person classifies as an independent contractor, under the facts and circumstances of a given case. The term has a fairly well defined meaning under the decisions of many jurisdictions, including our own. An independent contractor, under the quite universal rule, may be defined as one who carries on an independent business, and contracts to do a piece of work according to his own methods, subject to the employer's control only as to results. The commonly recognized tests of such a relationship are, although not necessarily concurrent, or each in itself controlling: (1) the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price; (2) independent nature of his business or of his distinct calling; (3) his employment of assistants, with the right to supervise their activities; (4) his obligation to furnish necessary tools, supplies, and materials; (5) his right to control the progress of the work, except as to final results; (6) the time for which the workman is employed; (7) the method of payment, whether by time or by job; (8) whether the work is part of the regular business of the employer. If the workman is using the tools or equipment of the employer, it is understood and generally held that the one using them, especially if they are of substantial value, is a servant."

In In re Estate of Amond, 203 Iowa 306, 308, 210 N. W. 923, 924, this court states:

"* * * we find that the test quite uniformly applied in this state is: Does the employee represent the master as to the result of the work only, or as to the means by which the result is obtained? If as to the result, and in the employment of the means he acts entirely independently of the master, he must

be regarded as an independent contractor. * * * In each of these cases, the determinative question was: Did the employer have the right to direct the workman as to the manner and means of doing the work: that is, did he exercise control over him as to the means employed and manner of rendering the services?''

With these tests in mind and also being mindful that the services rendered must be shown to the satisfaction of the Commission to be free from control and direction, both under the *contract of service and in fact,* we have reached the conclusion that in the case at bar there was not a relationship of employer and employee as contemplated by the Unemployment Compensation Law and that the facts in this case do not justify us in holding that the claimant, under the tests above enumerated and this particular statute, comes under the classification of an employee. It will be observed that the most that can be said for the matter of supervision was that the Company sought to stimulate the activities of their dealers but did not control their activities ''in fact.'' The record fully justifies the conclusion that the Company was interested only in the results to be gained by their dealers.

Although this particular legislation has been on the statute books of our several states for only a comparatively short period of time, yet there have been numerous decisions handed down by the several appellate courts of sister states.

In the case of Levine v. Aluminum Cooking Utensil Co., Inc., 258 App. Div. 1023, 17 N. Y. S. 2d 434, it is shown that the claimant entered into a written contract with the company to act as distributor of appellant's goods. The manner of stimulating sales and making reports were somewhat similar to the facts in this case and upon consideration by that court it was held that the claimant was an independent contractor under the provisions of the unemployment insurance act [Labor Law, section 500 et seq.] of New York.

Perhaps attention should be called to the fact that the New York statute does not have the same statutory definition

contained in section 1551.25 (G) (6) (a) of the Iowa statute. The New York statute uses the term "employer" and "employee." The references to the New York cases are made to indicate the attitude of the courts to the particular questions involved.

In the case of Washington Recorder Pub. Co. v. Ernest, 199 Wash. 176, 91 P. 2d 718, 124 A. L. R. 667, the court held that carriers of a newspaper who were required to purchase papers at a certain price and to collect for said papers at an established rate were independent contractors even though their contract relationship might be terminated at any time. It might be stated, however, that in the case of McDermott v. State, 196 Wash. 261, 266, 82 P. 2d 568, 570, another division of that state's appellate court held as follows:

"It is unnecessary to determine whether the common law relation of master and servant exists between respondent and the barbers and other operatives in his shop, because the parties are brought within the purview of the unemployment compensation act by a definition more inclusive than that of master and servant."

Because of the variance of the holdings in the two divisions of the Washington supreme court, neither of these holdings may be termed to be particularly conclusive.

Further cases which somewhat support the contention of the Company are Barnes v. Indian Refining Company, 280 Ky. 811, 134 S. W. 2d 620, where a dealer in petroleum products under a consignment agreement is held to be an independent contractor. Also Texas Co. v. Wheeless, 185 Miss. 799, 187 So. 880, where also a dealer in petroleum products under consignment was held not to be an employee of the company. See also Northwestern Mutual Life Ins. Co. v. Tone, 125 Conn. 183, 4 A. 2d 640, 121 A. L. R. 993; Wisconsin B. & I. Co. v. Industrial Com. [Ramsay], 233 Wis. 467, 290 N. W. 199.

Courts which have held to the theories suggested by counsel for the Commission are hereafter noted.

In the case of Industrial Com. v. Northwestern Mutual

Life Ins. Co., 103 Colo. 550, 88 P. 2d 560, the court held the company was required to show that the individual services rendered must meet the requirement of all three tests (the Colorado statute [Colorado Session Laws of 1937, chapter 260, section 19(g)] has sections (a), (b) and (c) as previously noted) and a failure to conform to any one of them is sufficient to create statutory employment.

In Unemployment Comp. Com. v. Jefferson Standard Life Ins. Co., 215 N. C. 479, 2 S. E. 2d 584, it was held that agents of the company, under the facts presented, were employees. The North Carolina statute [1937 Supplement to 1935 North Carolina Code, chapter 131A, section 8052(19) (g) (6)] has all three factors included in their definition of service.

Several cases relative to the question as to who is included under the Unemployment Compensation Law have been passed on by the Utah supreme court.

In the case of Globe Grain & Milling Co. v. Industrial Com., 98 Utah 36, 40, 91 P. 2d 512, 514, we have a case somewhat similar to our present case. One Thomas made an arrangement with the company to sell some supplies on a commission basis. In this case the Utah court stated:

"The most independent of independent contractors therefore are not included in the class of individuals entitled to benefits, but a class of individuals, who under strict common law concept of independent contractorship were other than employees, are entitled. We need not draw the line. It is drawn for us by the act. Cases appearing since this opinion was written but before publication hereof which treat of this aspect of the case are: Industrial Commission v. Northwestern Mutual Life Ins. Co., Colo., 88 P. 2d 560: Unemployment Compensation Comm. v. Jefferson Standard Life Ins. Co., 215 N. C. 479, 2 S. E. 2d 584. In the case of North Western Mutual Life Ins. Co. v. Tone, 125 Conn. 183, 4 A. 2d 640, the statute expressly restricted the benefits to the relationship of master and servant."

In the case of Creameries of America, Inc., v. Industrial

Commission, 98 Utah 571, 102 P. 2d 300, the Utah court again passed upon the question as to who was included under the provisions of the Utah statute. Here, salesmen of milk products under the facts presented and the Utah statute were held to be individuals in employment. The Utah statute [1939 Supplement, Utah, title 42, chapter 2B, section 19 (j) (5)] has all three elements of service as have heretofore been referred to as subsections (a), (b) and (c).

Attention is also called to the case of Salt Lake Tribune Publishing Company v. Industrial Com., Utah, 102 P. 2d 307, where newspaper carriers under the evidence were held to be individuals in employment.

In the case of Singer Sewing Machine Co. v. Unemployment Com., Or., 103 P. 2d 708, it was held by that court that where under a written contract the individual was required to account for all merchandise sent him, and do any acts that the employer might consider necessary or advisable, the individual was an employee.

The case of Schomp v. Fuller Brush Company, 124 N. J. L. 487, 12 A. 2d 702, holds that "dealers" of the Fuller Brush Company were employees and were, under the evidence in that case, *not free from control under the contract and in fact.*

It is interesting to note that the Utah supreme court in the case of Fuller Brush Co. v. Industrial Com., Utah, 104 P. 2d 201, held that salesmen of the Fuller Brush Company are not employees and take a somewhat different view from that indicated in their earlier cases. The facts in evidence in this last-mentioned case are virtually similar to the facts in the case of Schomp v. Fuller Brush Co., supra, in which case it was held Schomp was an employee.

It should be kept in mind that the statutes are not all the same in every state. The statute is similar to the Iowa statute in Kansas, Massachusetts, Mississippi and Texas. In 33 of the states the subsections (b) and (c) under this subsection are a part of the statute of the particular state. And in this connection

it should be stated that in most of the cases, if not in all relied upon by appellees, the subsections (b) and (c) are a part of the statute considered. In the Connecticut statute there is a particular reference made to the relation of master and servant.

It is the conclusion and holding of this court that service as contemplated by the Iowa statute is not found under the evidence and that the claimant herein was free from control or direction over the performance of his services both under his *contract of services and in fact.* It is the further holding of the court that the facts found by the Commission do not support the making of the order of the Unemployment Compensation Commission and the decree of the district court sustaining it.

The decree of the lower court is reversed with directions that this case be remanded to the district court for a decree in conformity with our holding.—Reversed and remanded.

HALE, C. J., and BLISS, STIGER, SAGER, and MILLER, JJ., concur.

OLIVER, MITCHELL, and GARFIELD, JJ., dissent.