BEAVERDALE MEMORIAL PARK, INC. *v.* CORNELIUS J. DANAHER, ADMINISTRATOR.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued May 9—decided July 16, 1940.

*Charles M. Lyman,* for the appellant (plaintiff).

*Harry Silverstone,* assistant attorney general, with whom, on the brief, was *Francis A. Pallotti,* attorney general, for the appellee (defendant).

AVERY, J. The plaintiff is a corporation located in New Haven engaged in the business of operating a cemetery in that county under the name of Beaverdale Memorial Park. On June 7, 1939, the plaintiff received notice from the acting administrator of the unemployment compensation law, pursuant to General Statutes, 1937 Sup., § 814d, assessing contributions upon the plaintiff as the employer of Eugene A. Sexton, its sales manager, and four salesmen. From

this action of the administrator, the plaintiff appealed to the Superior Court where judgment was entered dismissing the appeal and the plaintiff has appealed to this court. Two questions are presented: (1) Whether Sexton, the plaintiff's sales manager, was its employee or an independent contractor, and the four salesmen were to be considered his employees or those of the plaintiff, and (2) whether upon an appeal of this character, under the unemployment compensation law, the Superior Court determines the matter de novo as though no decision had been made by the administrator, or acts as an appellate body and determines whether the administrative action is arbitrary, unreasonable, or illegal.

The facts so far as material are these: At the commencement of its operations, the plaintiff employed Sexton. It entered into two written contracts with him, under one of which he was placed in charge of the operation of the cemetery as general manager and under the other in charge of the selling organization as sales manager. These two contracts were twice renewed, the current contracts being dated October 26, 1935, and being identical with those previously existing between the parties. Under one of these contracts, Exhibit 1, Sexton acts as general manager in charge of the operation of the cemetery, has supervision over all employees, other than officers, but including the superintendent of the cemetery grounds, and over the advertising and bookkeeping, and handles everything pertaining to the management, development and maintenance of the cemetery. He employs and discharges the employees. He does not receive a stated salary for his services, being paid a commission based upon the volume of sales, and is not required to devote his full time to the work. The plaintiff does not dispute that under this contract

Sexton was its employee and has made payments under the unemployment compensation law for Sexton's services as general manager.

The other contract, Exhibit B, made the same day, provides for his services as sales manager. Under this contract, he has supervision of the selling organization and hires and discharges the salesmen. He does not himself solicit customers or ordinarily make sales. He does not receive a stated salary but is paid a commission based upon the volume of sales. Out of this commission, he pays the salesmen, four in number. The contract recites that the "corporation hereby designates said Sexton as its sole and exclusive agent for the sale of said lots" for a period of five years from October 15, 1935, "subject, however, to the right of either party to terminate and cancel this agreement upon the contingencies hereinafter named," which, among other things, provides for termination at any time by either party upon ninety days' notice, but in case of such termination the corporation is to thereafter render monthly statements of collections on sales made during the life of the agreement and send to Sexton remittances based on such statements. Sexton agrees to organize, maintain, and supervise a selling organization of men of good moral character, who would perform their duties honestly and efficiently, and to pay these men, but "said corporation reserves the right to have removed from such selling organization any employee whom it deems undesirable and inefficient." The corporation agrees to provide and maintain at its own expense a suitable office equipped with telephone service, advertising literature, etc. and employ "in said office an office clerk who shall keep the books of the corporation, receive incoming money and render statements of all sales and collections thereon to said Sexton" and to pay "as compensation

for Sexton's services" a commission based upon the selling price. The terms of the sale, as well as the selling price, were fixed in the contract which provides that the price might be changed by mutual agreement. The corporation also agrees to do such advertising at its own expense as it and Sexton might by agreement deem necessary; and, further, it is provided that "during the life of this contract it may be advisable for said Sexton to offer certain suggestions for said corporation to adopt for the advancement of sales, and such suggestions will only come after mature thought and it is hoped that these suggestions will be discussed in the proper manner by both parties."

The two contracts are part of the same transaction and represent different phases of Sexton's services to the company. The two contracts are to be construed together. *Sherman's Sons Co.* v. *Industrial & Mfg. Co.*, 82 Conn. 479, 481, 74 Atl. 773; *New Britain* v. *New Britain Telephone Co.*, 74 Conn. 326, 329, 50 Atl. 881.

The fundamental distinction between an employee and an independent contractor depends upon the existence or nonexistence of the right to control the means and methods of work. *Norwalk Gaslight Co.* v. *Norwalk*, 63 Conn. 495, 524, 28 Atl. 32; *Caraher* v. *Sears, Roebuck & Co.*, 124 Conn. 409, 412, 200 Atl. 324; *Francis* v. *Franklin Cafeteria, Inc.*, 123 Conn. 320, 323, 195 Atl. 198; *Northwestern Mutual Life Ins. Co.* v. *Tone*, 125 Conn. 183, 190, 4 Atl. (2d) 640. "The right to discharge is one of the strong indications that the relationship is one of employment." *Aisenberg* v. *Adams Co., Inc.*, 95 Conn. 419, 423, 111 Atl. 591; *Jack and Jill, Inc.* v. *Tone*, 126 Conn. 114, 119, 9 Atl. (2d) 497. " 'Employment' shall mean any service, including service in interstate commerce, performed under any express or implied contract of hire

creating the relationship of master and servant." 1937 Supplement, § 803d(a).

From the finding it appears that the salesmen are employed and discharged by Sexton only and are paid by him individually by his own personal check. They have no direct dealing with the officers of the plaintiff and do not receive lists of customers from them. All arrangements with regard to their work are made with them by Sexton who gives them their instructions. They are not accountable to any person except Sexton. The amount of compensation paid to them is not fixed or controlled by the plaintiff or its officers. They do not work during any stated hours, but report each morning to Sexton for instructions. The plaintiff has exercised no supervision over Sexton in his capacity as sales manager or over the salesmen employed by him, and his compensation as sales manager is separate from that paid him as general manager. In view of the facts found, the salesmen were clearly employees of Sexton. He occupied a position with relation to the plaintiff analogous to that of an independent real estate agent who sells real estate upon terms and prices fixed by his principal. The fact that he occupied an office provided by the company and that the agency could be terminated by either party on ninety days' notice are not controlling. The legal relationship between Sexton and the company was that of an agent selling real estate on commission rather than that of a servant performing duties subject to the orders of a master. Having regard to the facts found, there was no basis under the contract for the finding of the trial court that the relationship between Sexton as sales manager, or the salesmen, and the company was that of master and servant. Ordinarily, the determination of the relationship of master and servant is a question of fact. *Tierney* v.

*Correia,* 120 Conn. 140, 146, 180 Atl. 282; *Manning* v. *Woodland Tobacco Co.,* 113 Conn. 282, 287, 155 Atl. 61. It is a conclusion of fact and if unsupported by the subordinate facts found it is erroneous as a matter of law.

The plaintiff also challenges conclusions of the court importing that its function was only to ascertain whether the administrator's conclusion was unreasonable, arbitrary, or illegal. By the statute, 1937 Supplement, § 814d(f), cited in the footnote [1], the court is given authority upon the hearing to "confirm or correct the action of the administrator." An appeal in such a case as this is not one in the sense of a transfer of jurisdiction from one court to another but simply " 'a process, under the misleading name of appeal, for invoking the judicial power to determine a legal injury complained of, or the legality of an act done by the officers of another department.' " *DeFlumeri* v. *Sutherland,* 109 Conn. 583, 585, 145 Atl. 48; *Brein* v. *Connecticut Eclectic Examining Board,* 103 Conn. 65, 87, 130 Atl. 289; *Huntington Telephone Co.* v. *Public Utilities Commission,* 118 Conn. 71, 80, 170 Atl. 679. Before the action of the administrative

---

[1] If an employer shall fail to file a report for the purpose of determining the amount of contributions due under this chapter, or if such report when filed shall be incorrect or insufficient and the employer shall fail to file a corrected or sufficient report within twenty days after the administrator shall have required the same by written notice, the administrator shall determine the amount of contribution due, with interest thereon pursuant to subsection A hereof, from such employer on the basis of such information as he may be able to obtain and he shall give written notice of such determination to the employer. Such determination shall finally fix the amount of contribution unless the employer shall, within thirty days after the giving of such notice, appeal to the superior court for Hartford county or for the county in which the employer's principal place of business is located. Said court shall give notice of a time and place of hearing thereon to the administrator. At such hearing the court may confirm or correct the action of the administrator.

board can become final and irrevocable, the party affected must have the opportunity of a full and fair hearing after due notice. *Railroad Commission of California* v. *Pacific Gas & Electric Co.*, 302 U. S. 388, 393, 58 Sup. Ct. 334; *National Labor Board* v. *Jones & Laughlin Steel Corp.*, 301 U. S. 1, 47, 57 Sup. Ct. 1. The nature of the hearing upon appeal depends upon the nature of the hearing required by law before the administrative board.

The term "administrative board" is very broad and includes bodies exercising varied functions, some of which involve orders made or other acts done ex parte or without full hearing as to the operative facts, while others are done only after such notice and hearing. The functions of the former kind are plainly administrative and those of the latter are quasi judicial. The function of the court in reviewing the proceedings of an administrative board depends upon the character of the proceeding. In cases where the statute provides for a full hearing and record before the administrative board, the procedure on the so-called appeal, like the procedure upon a trial before a judge, is upon the record of the proceedings before the board; and from this record it can be determined whether the board acted arbitrarily, unreasonably, or contrary to law. On the other hand, where it does not appear from the record of the proceedings before the administrative board whether or not its decision was legally warranted by the facts upon which it acted, evidence may be received by the court acting on the appeal as to the testimony before the administrative board and the proceedings upon which it acted, *Grady* v. *Katz*, 124 Conn. 525, 530, 1 Atl. (2d) 137, or, on the other hand, the court upon appeal may hear evidence itself or by a reference and determine for itself what the facts were and assume that the administrative board acted

upon those facts. *Levine* v. *Zoning Board of Appeals of Meriden,* 124 Conn. 53, 57, 189 Atl. 173; *Skarzynski* v. *Liquor Control Commission,* 122 Conn. 522, 526, 191 Atl. 98.

In an appeal under the statute applicable to this case, the original assessment having been made ex parte and without notice, the aggrieved party is entitled, under the constitution, to a full hearing after notice and the statute provides that upon such hearing the court shall correct the assessment. The question of whether a tax has been improperly assessed upon a person does not rest in the administrative discretion of the assessing officer but presents a pure question of law based upon the facts of the particular case. If the court finds that the tax has been improperly assessed or is incorrect as to amount or in any other respect, it follows as a matter of course that the assessing authority acted illegally.

The trial court was not in error in holding that the question before the Superior Court was to determine whether the unemployment compensation administrator could legally and reasonably have reached the conclusion he did and for the purpose of determining that question the plaintiff was entitled, in a proceeding under this statute, to a full hearing in the Superior Court. It was in error in deciding either that the administrator could reasonably conclude or that in fact Sexton in his capacity as sales manager, and the four salesmen were employees of the plaintiff for whom the plaintiff was required to make contributions under the unemployment compensation law.

There is error, the judgment is reversed and the case is remanded to the Superior Court with direction to enter judgment sustaining the plaintiff's appeal and vacating the assessment made by the unemployment compensation administrator.

In this opinion MALTBIE, C. J., BROWN and JENNINGS, Js., concurred.

ELLS, J. (dissenting in part). I disagree with the conclusion that Sexton is an independent contractor and that the four salesmen are his personal employees. He is a combined general manager and sales manager, working entirely within the Beaverdale organization, doing both jobs in the corporation's office. Beaverdale pays all expenses,—office, telephone, stationery, advertising, and office clerk. It is held that he is an employee as general manager, but an independent contractor as sales manager. Yet in the statement of facts contained in the majority opinion there are striking similarities, and no distinguishing dissimilarities. As general manager "he employs and discharges the employees. He does not receive a stated salary for his services, being paid a commission based upon the volume of sales." As sales manager he "hires and discharges the salesmen. . . . He does not receive a stated salary but is paid a commission based upon the volume of sales. Out of this commission, he pays the salesmen." "The corporation agrees to provide and maintain at its own expense a suitable office equipped with telephone service, advertising literature, etc. and employ 'in said office an office clerk who shall keep the books of the corporation, receive incoming money and render statements of all sales and collections thereon to said Sexton' and to pay 'as compensation for Sexton's services' a commission based upon the selling price." The moving sentences leading to what I think is an erroneous conclusion are "the plaintiff has exercised no supervision over Sexton in his capacity as sales manager or over the salesmen employed by him, and his compensation as sales manager is seperate from that paid him as general manager. In view of

the facts found, the salesmen were clearly employees of Sexton." We have repeatedly held that "it is not the fact of actual interference and control, but the right to interfere, which makes the difference between an independent contractor and [an employee]." *Norwalk Gaslight Co.* v. *Norwalk*, 63 Conn. 495, 525, 28 Atl. 32. Beaverdale had every right to interfere. It had the right to cause the discharge of salesmen if it thought them undesirable or inefficient. Sexton could hire only persons of good moral character and they must perform their duties honestly and efficiently, else the corporation had the right to bring about their discharge. Although clothed in indirect language, the contract in effect gave Beaverdale the actual control, the right to hire and fire. That they did it through Sexton, their sales manager, is of no moment.

There is a second consideration. The opinion states that "ordinarily, the determination of the relationship of master and servant is a question of fact. . . . It is a conclusion of fact and if unsupported by the subordinate facts found it is erroneous as a matter of law." I think great weight should be accorded the finding of the fact of employment by the trial court, especially, as here, where the facts found point directly to the conclusion reached.

A third consideration is that we are here construing the relationship of employer and employee as it affects social legislation. The humanitarian objectives of the Unemployment Compensation Act are vital considerations, and the act should be liberally construed to effect its purposes.

I agree with the conclusion reached by the trial court and the majority opinion as to the question of procedure, and conclude that the trial court did not err in any respect.