## CONNECTICUT BAPTIST CONV.
*vs.*
## JOHN W. MURPHY, MAYOR

Superior Court      New Haven County      File No. 59124

MEMORANDUM FILED NOVEMBER 19, 1940.

*Beers & Beers,* of New Haven, for the Plaintiff.

*Vincent P. Dooley,* of New Haven, and *Harold C. Donegan,* of New Haven, for the Defendant.

INGLIS, J.   This is an appeal from the refusal of the mayor of New Haven to issue a certificate of approval of the location for a gasoline station on property owned by the plaintiff on the northeast corner of Grand Avenue and Poplar Street in New Haven.

The sole question before the court on such an appeal is as to whether the mayor in refusing the approval acted illegally, unreasonably or arbitrarily.   *DeFlumeri vs. Sunderland,* 109 Conn. 583.   In the present case there is no record purporting to be complete as to what evidence appeared at the hearing on this application held on May 21, 1940, and indeed it is apparent that the mayor acted not alone on that evidence but also on the basis of his own personal knowledge of conditions surrounding the location in question.   Moreover, upon the denial of the application, the mayor assigned no reasons for the denial, either verbally or in writing.   Accordingly, on the trial of the case, evidence has been received as to what are the true conditions surrounding the property in question on the theory that the mayor must have had those conditions in mind and also the mayor's own testimony has been received as to the considerations which motivated his denial of the application on the theory that those were the reasons which led him to his conclusion.   *Beaverdale Memorial Park, Inc. vs. Danaher,* 127 Conn. 175.

The reasons now assigned by the mayor for his decision may be summarized as follows: (a) there is a large vehicular traffic east and west on Grand Avenue; (b) there are several schools in the vicinity; (c) the location of a gasoline station at the place in question would diminish parking space; (d) there is a bus stop at the corner in question; (e) a fire hydrant is located at the corner; and (f) the presence of a gasoline station

at this point would create a traffic hazard particularly for school children, but also for others.

The following facts appear from the evidence and from an inspection of the premises. The plot of land proposed by the plaintiff to be used as a gasoline station is a rectangle with a frontage of 115 feet on Grand Avenue and a depth of 75 feet on Poplar Street. Grand Avenue runs approximately east and west and has a width between curbs of about 60 feet. There are still trolley car tracks in Grand Avenue but they are practically abandoned, being used only occasionally to get trolley cars into a repair shop located two blocks to the east of Poplar Street for purposes of repair. Connecticut Company buses run on Grand Avenue on a six-minute schedule and a stop for west-bound buses is marked by a white banded pole located in front of the premises in question about 15 feet east of the corner of the curbs. A fire hydrant is located on the curb line of Grand Avenue about eight feet east of the corner of the curbs.

The whole neighborhood for many blocks along Grand Avenue, both to the east and to the west of the intersection with Poplar Street is zoned as "Business A Zone." And the area on both sides of Grand Avenue for several blocks in both directions from Poplar Street is built up partly with old dwelling houses but largely with either one story store buildings or buildings with stores on the ground level and living apartments in the upper stories.

Poplar Street runs practically north and south. Opposite the location in question it is about 30 feet in width between curbs. Back beyond the influence of the intersection with Grand Avenue, it is zoned as "Residence C Zone" and is built up mostly with old residences.

The schools referred to by the mayor are four in number. One, known as Woolsey School, with an attendance of about 280 pupils, is located at the corner of Poplar Street and Woolsey Street one block south of the premises in question and on the opposite side of Poplar Street. The second is the Fairhaven Junior High School, which has an attendance of about 1,000, and is located one block and a half of a very long block east of the premises in question on the opposite side of Grand Avenue. The street running parallel with Poplar Street and next east of it is Ferry Street. Ferry Street is a principal

artery of traffic and that as well as Grand Avenue has to be crossed to get from the Junior High School to the location of the proposed gasoline station. The third school is St. Francis School, a grade school with about 800 pupils. That is situated on the east side of Ferry Street, a long half block north of Grand and therefore a long block and a half from the location in question and on the far side of Ferry Street from it. The fourth school is a school for subnormals with about 100 students. This is located on Atwater Street which is three blocks east of Poplar Street along Grand Avenue, and is nearly a block north of Grand Avenue.

The traffic on Grand Avenue is only moderately heavy. It is not a main through artery but might be classed as a secondary artery of traffic. On the average in each 18 hour period from 6 a.m. to 12 p.m. the vehicular traffic in both directions taken just east of Poplar Street is 6,819 vehicles and the average pedestrian traffic per each 18 hour day is 792. Traffic on Poplar Street is light. The average 18 hour daily vehicular traffic in both directions taken just north of Grand Avenue is only 663 vehicles and the average pedestrian traffic is 264 people. There is no particular parking problem on either Grand Avenue or Poplar Street near their intersection, there being ample space to accommodate all who wish to park their cars in the neighborhood.

In testing the validity of the mayor's action based on these facts, it must be borne in mind that an administrative official, passing on an application such as this one, has a very wide discretion and his action must be upheld if it can be justified in reason. *DeFlumeri vs. Sunderland*, 109 Conn. 583, 586. On the other hand, it must also be borne in mind that "selling gasoline is not a business or privilege to be exercised only by virtue of a public grant, but is a common right to be exercised independently by any competent person conformably to reasonable regulations, such as pertain to public health and safety, and others of similar nature, equally applicable to all who choose to engage therein." *Perdue vs. Zoning Board of Appeals*, 118 Conn. 174, 179. The statutes (Cum. Supp. [1935] §§646c, 647c) clearly contemplate that the sale of gasoline is to be permitted at some locations and the law is such that no person should be deprived of the right to use his property for the sale of gasoline unless there is some substantial reason based on sound public policy for so depriving him of that right.

In the light of these considerations, the question here is as to whether any of the reasons assigned by the mayor, as measured against the facts found in the case, can, in reason, be found to be substantial reasons for his refusal of his approval of the location. Taking up his reasons in order: (a) It is concluded that the amount of traffic at the corner in question, although large compared to that in some localities, is not so large that it, in reason, should militate against the corner being used for a gasoline station. It is to be expected that gasoline stations will be located on streets where the traffic is moderately heavy. That is the most suitable place for them.

(b) So far as the location of schools in the vicinity is concerned, the apparent reason for the Legislature setting up the proximity of schools as an element to be considered is two-fold. First, the carrying on of the business of a gasoline station in close proximity to a school might well result in the disturbance of the work of the school. Clearly, this proposed location is not close enough to any school to bring about any such result. Secondly, the proximity of a gasoline station to a school might result in a traffic hazard if it is so close that school children are apt to be passing the gasoline station in large groups. In the present case none of the schools are so located that that is apt to happen. The schools are so located that no large number of children are apt to pass in front of the premises in question either on the north side of Grand Avenue or the east side of Poplar Street in going either to or from school. The schools are located at such a distance and separated from the location in question by such streets that, upon dismissal from school, the children will be pretty well dispersed and those who do pass in front of the plaintiff's property will not be in large groups. It is therefore concluded that the location of the schools to which the mayor referred offers no reasonable ground of objection to the location of a gasoline station at the place in question.

(c) The parking situation in the neighborhood is not such nor likely to become such that the removal of the space at the curbs in front of the proposed station from that available for parking will make any appreciable difference.

(d and e) The presence of a gasoline station on the plaintiff's property will in no way affect the use of the corner as a bus stop or the use of the fire hydrant in its present location. None of the reasons of the mayor referred to in this paragraph,

therefore, can, in reason, be justified as valid reasons for his refusal of approval.

(f) The last reason assigned by the mayor is the claim that the location of a gasoline station at the corner in question would create a traffic hazard. The evidence is all the other way. It is clear that no appreciable traffic hazard will result from the location of a gasoline station on the premises in question and there is no reasonable basis for a conclusion that it would.

On all of the evidence, it is clear that if any location is suit-able for a gasoline station, the premises of the plaintiff are suitable. No valid objection against their use as such can in reason be raised. Accordingly, it is concluded that the de-fendant mayor, in refusing his approval of the location, acted unreasonably and arbitrarily.

Judgment may enter sustaining the appeal and ordering the defendant as mayor to issue a certificate of approval of the location described in the complaint as the location for a gas-oline station as prayed by the plaintiff in its application dated May 3, 1940. No costs shall be taxed against the defendant.