## ELECTROLUX CORPORATION
*vs.*
## CORNELIUS J. DANAHER, ADMINISTRATOR OF CONNECTICUT UNEMPLOYMENT COMPENSATION ACT

Superior Court        Fairfield County        File No. 60665

MEMORANDUM FILED JANUARY 27, 1941.

*Boardman, Grout, Swain & McCarthy,* of Bridgeport, for the Plaintiff.

*Harry Silverstone,* Assistant Attorney General, for the Defendant.

KING, J. This is an appeal from an *ex parte* assessment of an additional contribution under the Unemployment Compensation Act, made by the defendant against the plaintiff under the provisions of subsection (f) of section 1345e of the 1939 Supplement to the General Statutes. The assessment is levied

with respect to sales representatives of the defendant. The plaintiff claims that they are independent contractors, or, at least, that they do not fall within the statutory definition of employees, which defines employment as "any service.... performed under any express or implied contract of hire creating the relationship of master and servant." (Supp. [1939] §1334e, subsec. [a] [1].) The defendant, *ex parte,* found that the sales representatives were in the employment of the plaintiff under the above quoted definition.

Counsel have greatly aided the court, not only by excellent briefs, but also by a stipulation wherein the amount of the additional assessment due, if anything, was agreed to be $4,847.05. Thus the sole question really is whether the relationship between this plaintiff and its sales representatives is one of "employment" as above defined.

## I.
### PROCEDURAL LAW GOVERNING REVIEW OF ASSESSMENT.

The act of the Administrator of the Unemployment Compensation Act in levying an assessment is administrative, *ex parte,* and without notice or hearing. The Constitution requires that on the appeal there be a full hearing, after notice, which was had in the Superior Court in this proceeding. *Beaverdale Memorial Park, Inc. vs. Danaher,* 127 Conn. 175, 183.

Where, as here, there is no record in the tribunal below, the evidence heard in this court on the appeal is assumed to be the evidence before the tribunal below. *Id.* 182.

The function of the court on appeal is to determine whether the tribunal below (the defendant Administrator) acted arbitrarily, unreasonably, in abuse of its power or discretion, or illegally. *Id.* 181. If it did so act, then the action falls as unwarranted. But unless the court affirmatively finds that it did so act, the decision must stand. The burden of proof is on the appellant on this whole issue. *Id.* 183. The appeal does not bring up the case for a hearing *de novo* in the sense that the court's judgment is substituted for that of the tribunal below, as, for instance, in the case of an appeal from the decision of a justice of the peace.

## II.
### SUBSTANTIVE LAW GOVERNING DECISION.

In three cases arising under this Act the question of the existence of the relationship of employment was, as here, the

pivot point at issue. These three cases are (1) *Northwestern Mutual Life Ins. Co. vs. Tone,* 125 Conn. 183; (2) *Jack and Jill, Inc. vs. Tone,* 126 id. 114; and (3) *Beaverdale Memorial Park, Inc. vs. Danaher, supra.* The same may be said of *Buell & Co. vs. Danaher,* 8 Conn. Sup. 141. Each of the foregoing cases may be factually differentiated, in its details, from the case at bar, and this counsel have carefully done.

The court must determine whether the appellant has sustained the burden of proof resting upon it, by the application of the principles and tests of our Connecticut law as laid down in our cases. While the Supreme Court has not thus far held that the test of the existence of the employer-employee relationship is the same under this Act as under the Workmen's Compensation Act, and as at common law, no difference has been pointed out in any of the foregoing cases, nor have counsel here claimed that any existed. *Northwestern Mutual Life Ins. Co. vs. Tone, supra,* 189. Indeed, the cases of *Aisenberg vs. Adams Co., Inc.,* 95 Conn. 419, 421, and *Corbin vs. The American Mills,* 27 id. 274, 277, on both of which the defendant strongly relies, respectively arose under the Workmen's Compensation Act and at common law. Citations may be found, in the opinions in the foregoing cases arising under this Act, which are drawn from cases arising in both types of controversy.

The test of the existence of the relationship of employment is not identical in all jurisdictions, and there is no occasion to consider any cases from jurisdictions, either state or federal, other than Connecticut. The appellant lays great stress on a Virginia decision holding, in effect, that one of its sales representatives in that state was, under Virginia law, not in such a relationship to this appellant that it was liable, under the Virginia rule of *respondeat superior,* for damages for personal injuries caused by the negligent operation of an automobile by the sales representative. The appellant's claim that the Virginia decision should control the decision in this appeal "for the sake of uniformity" is without merit.

The same may be said for a ruling of the Internal Revenue Department (Exhibit O). This is not at all because the decisions themselves are not worthy of respect, but because neither the common law of Connecticut, nor the Connecticut statutes involved, were, nor properly should have been, considered by either tribunal. The court disregards each of the above decisions for the foregoing reasons.

The true test to apply is the Connecticut test, which is well phrased in the *Jack and Jill* case, on page 119, as follows: "The controlling consideration in the determination whether or not the relationship of master and servant exists, or that of independent contractor, is: 'Has the employer the general authority to direct what shall be done and when and how it shall be done—the right of general control of the work'." The almost unrestricted right of discharge existing here is an important sign pointing to the existence of the relationship of employment, but cannot be held alone controlling, since it existed in the *Northwestern* case in substantially the same form as in the instant case. The relationship of master and servant might exist although the sales representatives were not on the plaintiff's pay-roll or paid their own expenses, or could be considered to have received as compensation the difference between the wholesale price to them of an article and the retail price at which they disposed of it. *Jack and Jill, Inc. vs. Tone, supra,* 119.

## III.
### FACTS.
#### (1) *Under Contract. Exhibit A.*

The defendant bases its claim of such general control in part on the contract of employment, Exhibit A, and claims that this gives the plaintiff general control over (a) the goods (that is vacuum cleaners); (b) the terms of sale; (c) the proceeds of sale; (d) the term of employment, by discharge; (e) the forfeiture of earned installment commissions.

(a) The plaintiff in effect consigns the cleaner to the sales representative (Exhibit G); has security against loss in the form of a bond, and, to the extent that installment payments of $2 on each cleaner sold have built it up, has further security in a reserve fund of $100 belonging to the sales representative. This is a reasonable consignment arrangement and does not signify general control. *Romeo vs. Martucci,* 72 Conn. 504, 508.

The further requirement that a cleaner be brought back and exchanged in two weeks time, if then unsold (Exhibit G) is reasonable as tending to insure the use of a good-looking machine for demonstration purposes and for sale to a customer in the event, as sometimes happens, that the customer wants the particular machine demonstrated, instead of a new machine in an original package, which the sales representative states is,

but has not by demonstration proved to be, "just as good." This provision does indicate some control.

(b) There is nothing in the terms of sale provision to indicate appreciable control. Whatever may have been the case in years gone by, the modern legislative conception of the public good places the emphasis on the protection of the merchant rather than on the cost, to the public, of the merchandise. This is indicated by chapter 138a of the 1939 Supplement to the General Statutes, our so-called "Fair Trade Act", which was passed in a nation-wide wave of similar legislation. There is at least as much excuse for price fixing on the part of the defendant as on the part of any other manufacturer who might operate under said chapter 138a in similar fashion. The prohibition in paragraph 3 of Exhibit A against rebates, and the establishment of fixed allowances on used cleaners taken in part payment (Exhibit E), are in line with this modern concept of the public good.

(c) The turning in to the appellant of the proceeds of the sale is reasonable, if not absolutely necessary, if the accounts with the sales representatives are to be kept by the plaintiff as provided by paragraph 5 of Exhibit A. Most sales are on credit, and it could hardly be expected that independent contractors for house to house sales could be found in any quantity with the capital to finance, or the time to take care of, collections on installment sales in any volume. A central accounting system and the handling of collections by the defendant is virtually necessary, especially since the down payment customarily made on a cleaner is less than the representative's commission if the cleaner is ultimately paid for.

(d) The defendant lays great stress on the fact that the plaintiff may terminate the contract on 30 days notice for any reason or no reason (paragraph 15a). That this is an important consideration was held in the *Jack and Jill* case, at page 119. However, it is important to remember that these representatives are selling cleaners as distinguished from, for example, building buildings. It is one thing to retain the right to discharge a contractor in the middle of the performance of a contract to build a house, and quite another to insert in a contract for the continuous rendition of personal service (not including the purchase of materials in any appreciable degree) a right on the part of either party to terminate the contract on 30 days notice. The inference of control would be stronger

if the general right of discharge were immediate, as it is (paragraph 15b of Exhibit A) for misrepresentations and certain other misconduct set forth, all of which is of such a character as naturally to be productive of great harm to the defendant either by bringing it and its product into disrepute (paragraph 8) or otherwise (paragraphs 3 and 10).

(e) The forfeiture of an earned installment commission occurs, if at all, only in rare instances except in cases of sales outside of the sales representative's own territory. That the restriction of a salesman's activities to a local territory does not indicate general control was held in the *Northwestern* case.

Here the forfeiture, at most, is only partial. It may be taken as a provision showing control over the representatives to the extent of making it unprofitable for them to sell outside the large territories assigned to them.

(2) *As Established by Other Evidence and Course of Dealing.*

Besides the question of what evidence as to the right of general control is to be found in the terms of the contract, Exhibit A, there is also to be considered all of the evidence and exhibits as bearing on what actually took place, as tending to show either such a right of general control or the exercise of such general control. While the exercise of control, or the right to its exercise, in details necessary for the plaintiff's protection is not enough, in and of itself, to show an employment relationship (*Welz vs. Manzillo*, 113 Conn. 674, 679; *Francis vs. Franklin Cafeteria, Inc.*, 123 id. 320, 324) if it falls short of general control, yet the whole situation should be examined in the light of all of the evidence, and unless it appears that the defendant could not find from all of the evidence and all reasonable·inferences to be drawn therefrom that there was a right of general control (whether exercised or not), the defendant should prevail. *Beaverdale Memorial Park, Inc. vs. Danaher, supra.*

In an attempt fairly to apply the rule to the effect that although the motive to escape payment of a tax is not objectionable, yet where it is shown to exist the transaction claimed to have such an effect should be closely scrutinized, the defendant was given very wide latitude, which he utilized, in going into the appellant's taking over, on July 1, 1938, of the sales organization of the Electrolux cleaner, and the adoption on that date of the present contract in place of an old contract (Exhibit

Q), formerly used by the plaintiff's predecessor, Electrolux, Inc., which admittedly created the relationship of employer and employee between the sales representative and the Electrolux manufacturer. 27 *Am. Jur., Income Taxes* §248.

Apart from the contract, Exhibit A, there was no substantial evidence of additional control not fairly apparent from the contract. Optional attendance at the morning "pep" meetings and assistance of the team captains in making sales and informative literature of the plaintiff (Exhibits E and I) as to the strong points of its cleaner and methods of bringing them out by demonstration, are within the fair intendments of paragraph 9 of the contract, and involve no appreciable general control, as such.

On this head the real claim of the defendant may be summarized with substantial, although not absolute, accuracy, as this: That through the right of discharge there was in fact and in law a right of general control not superficially apparent from the terms of the contract, so that unknown oral or written directions of the plaintiff or its agents, and the literature containing these suggestive hints as to the best way to conduct oneself in order best to sell the cleaner, were in fact compulsory rules in minute detail, for disobedience to which there was the right, even if not always exercised, of discharge, and that in this way and by this method there was in truth a right of general control. If this were so, it would make no difference what was printed in the contract to the contrary. *Northwestern Mutual Life Ins. Co. vs. Tone, supra,* 187. The defendant's contention almost goes to the extent of claiming that an unrestricted right of discharge, since it might be used for any purpose including breach, in the slightest detail, of a verbal instruction, must necessarily give unrestricted right of control in all details, and, so, general control.

There is no evidence of any such intent, nor of the exercise of any such right of general control, and the provision for right of discharge existed in about the same degree in the *Northwestern* case, where the same argument as to the right of general control might have been made in spite of the stipulation in that case that in certain enumerated details (p. 187) the Northwestern Company in fact exercised no supervision or control. If it might reasonably be inferred that in fact, through this means or in any other way, in truth there was a right of general control, the defendant would prevail. But

in the absence of any reasonable justification for such inference, the defendant must fail.

The defendant could not have reasonably reached the conclusion, nor was it in fact true, that the sales representatives stood as to this plaintiff in the relationship of master and servant as required, under subsection (a) (1) of section 1334e of the 1939 Supplement to the General Statutes, in order to sustain this assessment.

The defendant erred in making the assessment in question against the plaintiff, and judgment may enter sustaining the plaintiff's appeal, and vacating the assessment of the defendant as Unemployment Compensation Administrator, as herein appealed from.