[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENTBY DEFENDANT NEW BRITAIN HOUSING AUTHORITY
This matter arises on a Motion for Summary Judgment filed by the Defendant New Britain Housing Authority. The relevant facts are set forth below.
On February 16, 1991 a fire broke out in a three floor multi-family dwelling located at 6 Erwin Place, New Britain, Connecticut. The fire apparently began as a result of the use of an electric space heater by the first floor CT Page 1267-I occupants. That apartment had no heating facilities and no source of central heat. The surviving Plaintiff and the decedents represented in this action were residing at or visiting 6 Erwin Place at the time of the fire. Plaintiffs Robert A. Maresca and Carmen Vives bring this action as administrators of the estates of the decedents.
The Defendant, New Britain Housing Authority, is a public corporation established pursuant to General Statutes §8-38, et seq. The Housing Authority's only involvement with 6 Erwin Place occurred when the owners of the property entered into a Rental Assistance Contract with the State of Connecticut, Department of Housing (Exhibit A[1]) as part of the State's Rental Assistance Program. The Rental Assistance Program, established by General Statutes § 8-345, is a program of rental assistance for low income families living in privately owned rental housing. Regulations of State Agencies, § 8-345(e)-2(a). Under the terms of that contract the building owner agreed to lease an apartment to Elvia Hernandez, and the State agreed to make rental assistance payments on her behalf. The Rental Assistance Contract bears a signature date of July 29, 1988, and the same August 1, 1988 commencement date as the Hernandez lease. Elvia Hernandez is not a party to this lawsuit. Her lease had terminated over six months before the fire broke out.
The Commissioner of Housing oversees this program but may designate an agent to administer the program in an individual community. Regulations, § 8-345(e)-2(b). Administrative responsibilities undertaken by the New Britain Housing Authority, as agent for the Department of Housing, pursuant to regulations promulgated by the Department of Housing included tenant selection, annual inspection for compliance with housing and health codes, and annual income and rent verification. Regulations §§ 8-345(e)-1 to 8-345(e)-11. By its terms, the Rental Assistance Contract began on the first day of the Hernandez lease and ended on the last day of the term of that lease.
Elvia Hernandez had entered into a lease agreement with the building owners for a term commencing August 1, 1988. (Exhibit C). The lease was terminated and rental assistance payments were terminated on July 31, 1990. (Exhibit D). Thereafter, the New Britain Housing Authority had no further involvement with the property, the property owners, or any of the owners' tenants. The fire occurred on February 16, 1991. CT Page 1267-J
Plaintiff administrators of the estate of the victims of the fire and the survivor, Hector Romero, Sr. have brought this action against the City of New Britain, the New Britain Housing Authority and seven municipal employees and/or officials. This action is consolidated with a related products liability action against DeLonghi America, Inc., DeLonghi SpA and Bradlees, Inc., in which the Plaintiffs allege that a defective electric heater was also a proximate cause of the fire.
The operative Second Amended Complaint contains 77 Counts. The claims against the Defendant New Britain Housing Authority sound in negligence, nuisance and liability for negligence and/or reckless disregard for health and safety pursuant to the various provisions and subsections of General Statutes §§ 7-101a and 52-557n. Counts Sixty-two to Seventy-six, inclusive. Claims have been asserted on behalf of the estates of the victims along with corresponding claims of loss of consortium and emotional distress allegedly suffered by Hector Romero, Sr. as a result of such negligence.
The operative Second Amended Complaint describes various theories of liability as to the Housing Authority. In Count Sixty-two the Plaintiffs allege that the Housing Authority or its employees were negligent in that they failed to inspect or inadequately inspected the premises and that the Authority is obligated to indemnify its Commissioners for the alleged negligent acts/omissions, pursuant to General Statutes § 7-101a. Counts Sixty-five, Sixty-eight, Seventy-one and Seventy-four seek recovery pursuant to General Statutes §52-557n for negligence, nuisance, failure to inspect leased property, and recklessness. In Counts Sixty-four, Sixty-seven, Seventy, Seventy-three and Seventy-six, Plaintiff Hector Romero claims damages for emotional distress under each of the aforesaid theories of liability. In a like manner he alleges loss of consortium in counts Sixty-three, Sixty-six, Sixty-nine, Seventy-two and Seventy-five.
All of the allegations of wrongdoing attributed to the Defendant New Britain Housing Authority involve claims that it was negligent in inspecting or that it failed to inspect 6 Erwin Place. In each instance, the Housing Authority's duty to inspect arises from the allegation that it provided rental subsidies to the tenants of 6 Erwin Place; and that before providing such subsidies, and on a recurring basis thereafter, it was CT Page 1267-K required to inspect 6 Erwin Place. The Defendant New Britain Housing Authority has moved for summary judgment.
Summary judgment is appropriate when the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Practice Book § 384; Gurliacci v. Mayer, 218 Conn. 531, 562 (1991). The function of the trial court in summary judgment proceedings is not to decide issues of material fact, but rather to determine whether any such issues exist. Nolan v. Borkowski, 206 Conn. 495,500 (1988). The court must view the evidence in the light most favorable to the non-moving party. Catz v. Rubenstein,201 Conn. 39 (1986).
The party moving for summary judgment bears the burden of proving the absence of a dispute as to any material fact. Nolan v. Borkowski, supra, 500. Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. Barthav. Waterbury House Wrecking Co., Inc., et al., 190 Conn. 8, 11-12
(1983); Farrell v. Farrell, 182 Conn. 34, 38 (1980); RuscoIndustries, Inc. v. Hartford Housing Authority, 168 Conn. 1, 5
(1975). It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. "Mere assertions of fact are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book Section 380."Bartha v. Waterbury House Wrecking Co., supra, 12.
The test is whether a party would be entitled to a directed verdict on the same facts. Suarez v. Dickmont PlasticsCorp., 229 Conn. 99, 105-106 (1994). "In Connecticut a directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." United Oil Co. v.Urban Redevelopment Commission, 158 Conn. 364, 380 (1969).
The Defendant New Britain Housing Authority bases its motion for summary judgment on two grounds: first, that it owed no duty to the Plaintiffs (decedents and survivor); and second, that even if such a duty was owed, liability is barred by the doctrine of sovereign immunity. Since the existence of CT Page 1267-L sovereign immunity would in all events be dispositive, this ground will be reviewed first.
I. Sovereign Immunity
The Defendant contends that the doctrine of sovereign immunity bars liability because in this instance, the Defendant was merely acting as agent for the State. Therefore, although not intrinsically entitled to the shield of sovereign immunity, as such an "agent" it is in this case thereby elevated to the protection of the sovereign immunity of the State and its agencies.
The Rental Assistance Program was established by General Statutes § 8-345, administration and implementation thereof being assigned to the Commissioner of Housing.[2] The Department of Housing issued regulations concerning this program, Regulations of State Agencies § 8-345(e)-1, et seq. (Exhibit B). Regulations § 8-345(e)-2(b) provides that the Department may designate an agent to administer the program in an individual municipality. Regulation § 8-345(e)-4a, provides:
 An assistance agreement shall be entered into between the department and the agent, or, where the agent has been designated by the municipality, between the department, the municipality and the agent.
The Defendant would quality as an "agent" as defined in Regulations § 8-345(e)-1(b).
The assistance agreement required by Regulations §8-345(e)-4a was not before the Court. However, it is apparent that the Defendant had significant involvement in connection with implementation of the pertinent Rental Assistant Contract, a copy of which is annexed as Exhibit A to Defendant's supporting memorandum.
The Defendant is a municipal housing authority. The enabling legislation for housing authorities is found at Chapter 128 of the General Statutes, § 8-38 et seq. A housing authority is "a public body corporate and politic . . . subject to the liabilities directly attendant to its statutory being under the statutory scheme of Part I of Chapter 128 of the General Statutes." Gordon v. Bridgeport Housing Authority,208 Conn. 161, 173 (1988). It has the power to sue and to be sued. CT Page 1267-M Gen. Stats. § 8-44(a). The powers of each authority are vested in the Commissioners thereof. Gen. Stats. § 8-41.
In Gordon v. Bridgeport Housing Authority, supra, the plaintiff claimed that the defendant Authority was acting under an agency relation with the defendant City sufficient to impose liability for personal injuries to the plaintiff's ward occurring on premises of the Authority and allegedly caused by the Authority's negligence. The Gordon court rejected this claim, inter alia, on the ground that the City had no power to control the actions of the Authority, since under Gen. Stats. § 8-41, the powers of the Authority were vested in its Commissioners.Gordon, supra, 184-85.
Such appears to be the case here. There is nothing before the Court to indicate other than that with respect to its subject Rental Assistance Contract undertaking, Defendant had "the right to control the means and methods of its work."Beaverdale Memorial Park v. Danaher, 127 Conn. 175, 179 (1940). Rather, it would appear that the Defendant functioned as a service contractor or independent contractor.
 An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of his work.
Spring v. Constantino, 168 Conn. 563, 573 (1975). Spring held that a public defender acts as an independent contractor, and is not a state official protected by the doctrine of sovereign immunity.
The Defendant is not entitled to summary judgment on the ground of sovereign immunity.
II. Duty
The gravamen of all of the claims against the Defendant New Britain Housing Authority is that Plaintiffs' damages resulted from the alleged fact that Defendant's employees and/or agents failed to inspect or negligently inspected the premises at 6 Erwin Place, and failed to require compliance with and/or enforce applicable safety codes. The Defendant contends CT Page 1267-N that under the established facts, it owed no duty to the victims represented by the Plaintiffs. The Plaintiffs contend to the contrary. The issue thus presented is whether or not the Defendant owed such a duty.
"Negligence is a breach of duty." Urban v. HartfordGas Co., 139 Conn. 301, 304 (1952).
 The law does not recognize a "duty in the air." To sustain a cause of action, the court must determine whether the defendant owed a duty to the plaintiff's decedent; and the applicable standard of care. The existence of a duty is a question of law. Only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand.
Shore v. Southington, 187 Conn. 147, 151-52 (1982). (Citations omitted).
Plaintiffs predicate the existence of Defendant's requisite duty on Defendant's involvement with the premises under the Rental Assistance Program. The combination of Regulations §§ 345(e)-8(b) and 345(e)-7(a) required the Department of Housing or its agent, here the Defendant, before approving a rental assistance contract to determine if the unit was "decent, safe and sanitary." Before execution of a contract, identified defects must be corrected by the owner, and the unit then reinspected and approved. Plaintiffs then assert that the Defendant was negligent in its inspection obligation in that it failed to determine the premises unsafe because of material violations of applicable HUD guidelines and building and housing codes.
Plaintiffs concede that they must establish that the Defendant's duty extended to the victims in this action. Actionable negligence cannot be based upon a breach of duty unless the person is within the class of persons to whom it is owed. McDowell v. Federal Tea Co., Inc., 128 Conn. 437, 440
(1941).
To bridge this gap, Plaintiffs propose the following syllogism: (1) The Rental Assistance Program was designed to CT Page 1267-O assist low income families in finding safe, decent and sanitary housing. (2) This program benefitted [benefited] all tenants in buildings receiving aid, and not just the immediate aid recipients. Also, the tenants at 6 Erwin Place were members of the class for whose protection the building and housing codes were enacted. (3) Therefore, the Defendant's failure to comply with applicable HUD guidelines and to require compliance with applicable building and housing codes constituted negligence per se and was a breach of a duty imposed for the benefit of all tenants of the building. See Opposition Memorandum of Law of Plaintiff Carmen Vives, Administratrix, pages 3, 6-7. This leap in logic attempts to bridge an impassable chasm.
In essence, the Plaintiffs propose that the Defendant was under an affirmative duty for the benefit of all present and future occupants of the entire building to cause the premises to be in compliance with applicable building and housing code requirements, and that this duty resulted from its obligations under the Regulations in connection with the Hernandez rental assistant contract. Plaintiffs, however, do not contend that their victims in any way relied to their detriment on any knowledge or representation that the then expired Hernandez contract had been entered into, or in fact had any knowledge of Defendant's prior involvement therewith.
In Shore v. Southington, supra, the plaintiff's decedent had been killed by a drunk driver who had been stopped but not arrested by the defendant police officer employed by the defendant town. There, as here, the duty of the defendant officer to act involved the exercise of discretion. Summary judgment in favor of the defendants was affirmed, the court holding that "[i]n deciding the issue of when, if ever, an official's public duty precipitates into a special one to prevent harm to an individual, the law requires, to maintain the action, a showing of imminent harm to an identifiable victim." Id., 156.
In so doing, Shore distinguished Sestito v. Groton,178 Conn. 520 (1979). Sestito involved a policeman who waited and watched a public disturbance without interfering until the plaintiff's decedent was shot. The distinction was based on the conflicting testimony in Sestito on the issue of whether it should have been apparent to the officer that his failure to act would be likely to subject an identifiable person to imminent harm. Shore v. Southington, supra, 153. CT Page 1267-P
The rule of Shore was followed in Gordon v. BridgeportHousing Authority, supra. In affirming the granting of the defendant City's motion to strike, Gordon held that the City had no duty to provide police protection to the plaintiff specifically, as distinguished from its duty to the public generally, because there were no facts alleged supporting a claim that the plaintiff belonged to a foreseeable class of plaintiffs.Gordon v. Bridgeport, supra, 180-182.
Sestito was brought under General Statutes § 7-108, which imposes liability on a municipality for failure of its police to exercise reasonable care or diligence in the prevention or suppression of a public disturbance. The defendant police officer clearly had a general duty to the public. The danger was imminent. Therefore, whether in addition he had subsumed a specific duty to the plaintiff's decedent was a "factual inquiry that should be left for jury determination."Sestito v. Groton, supra, 528.
Those circumstances are not here present. The Defendant Housing Authority had no general duty to present and future occupants of the building. The submitted facts establish only that the Defendant had a limited involvement with the premises in connection with the Hernandez rental assistance contract. Any inspection done by the Defendant would under the regulations been done prior to the August 1, 1988 commencement of the term of that contract and of the lease, and once annually thereafter.
Defendant's involvement ceased more than six months prior to the fire. That limited involvement does not rise to the level of triggering an affirmative obligation to cause building and housing code compliance for the benefit of future occupants of the entire building. Plaintiffs' victims were not within the class of persons to whom Defendant owed a duty.McDowell v. Federal Tea Co., Inc., supra.
The Defendant is entitled to summary judgment on this ground. The motion is granted. Judgment may enter in favor of the Defendant New Britain Housing Authority.
DAVID L. FINEBERG JUDGE, SUPERIOR COURT CT Page 1267-Q